Thomas Clyde BOWLING, Jr.,
Appellant/Cross–Appellee,

v.

COMMONWEALTH of Kentucky,
Appellee/Cross–Appellant.

Nos. 91–SC–45–MR, 91–SC–75–MR.

Supreme Court of Kentucky.

Sept. 30, 1993.

As Modified on Denial of Rehearing
March 24, 1994.

Barbara M. Holthaus, Timothy T. Riddell, Asst. Public Advocates, Dept. of Public Advocate, Frankfort, for appellant.

Chris Gorman, Atty. Gen., Kent T. Young, Laura Early, Asst. Attys. Gen., Joseph T. Bouvier, Sp. Asst. Atty. Gen., Brent Caldwell, Deputy Atty. Gen., Frankfort, for appellee.

WINTERSHEIMER, Justice.

Bowling was convicted of the intentional murders of Eddie and Tina Earley. He was also found guilty of fourth-degree assault for the injury done to the toe of the Early's 2–year–old son. He was sentenced to death for the murders and to twelve months in jail for the assault.

Sometime around 7 a.m. on April 9, 1990, while the victims sat in their automobile in a parking lot outside a Lexington dry cleaning establishment, Bowling shot and killed the two adults and wounded the child. Witnesses testified that they observed Bowling's actions after the shots were fired. The victims' auto was stopped in the parking lot and the right front of Bowling's auto crashed into the driver's side of the Earleys' vehicle. A witness testified that he saw Bowling fire into

the automobile, return to his own auto and then go back and check the victims before returning to his own automobile and fleeing the scene.

Bowling's counsel states that the overriding question is why did Bowling react in such a violent way. Evidence presented in his defense indicates that his wife had left him, that he had been unable to gain employment and that he had exhibited overt signs of suicide prior to the shooting. In this appeal, he raises twenty-two issues. We have carefully reviewed all the legal issues presented by Bowling. Allegations of error which we consider to be without merit will not be addressed in this Opinion.

## I

■ The method by which Bowling's jury was chosen complied with Kentucky law and due process. He received a fundamentally fair trial by a jury whose members were qualified to consider the case on the basis of the evidence presented to them. *Cf. Sanders v. Commonwealth,* Ky., 801 S.W.2d 665 (1990). Bowling argues on appeal that the manner by which his jury was chosen did not comply with Kentucky law or due process. The jury that sentenced Bowling to death was fair and impartial.

The trial judge granted 18 peremptory jury challenges to the defense prior to the beginning of voir dire. Pursuant to the ratio set out in RCr 9.40, the trial judge then granted the prosecution twelve peremptory challenges. The court planned to have two alternates on the jury thus it was necessary to qualify a total of 44 potential jurors through the individual voir dire process. Toward the end of the second day of voir dire, the trial judge decided to add four jurors to the panel, even though the court was required to have only 44 potential jurors. The trial judge stated that the additional four individuals were to be used as "protection against unforeseen things and revised opinions." Bowling did not object to the additional jurors originally. It was not until the end of the following day that the defense made objection when Bowling requested that the trial court review its decision not to strike two previously qualified potential jurors for cause. At the beginning of the following day, the trial judge agreed to strike one of those jurors for cause leaving a potential pool of 47 others. Originally, 90 potential jurors qualified and 48 had been randomly selected from that number.

■ Bowling claims that the decision to eliminate three qualified potential jurors, two of whom did not favor the death penalty, failed to comply with the law regarding jury selection. We disagree. There was no substantial or prejudicial deviation from the principle of random selection in the procedures taken by the trial court. It was not reversible error for the trial judge, in an abundance of caution, to qualify an additional four jurors. All members of the potential jury pool were randomly selected. There was no reversible error.

■ Bowling was not denied his constitutional right to an impartial jury because the trial judge refused to strike for cause certain jurors who were allegedly biased. A trial court has discretion when deciding whether to excuse a juror for cause. *Peters v. Commonwealth,* Ky., 505 S.W.2d 764 (1974). After careful review of the record and considering the totality of the circumstances, this Court cannot find an abuse of discretion in the trial court's decision to allow these potential jurors to serve. During *voir dire,* each was able to express an attitude that they were able to consider the full range of penalties from the minimum to the maximum. The fact that some potential jurors expressed a tendency toward the most severe penalty when presented with specific situations does not automatically preclude their service. There was no abuse of discretion or reversible error in the decision by the trial judge to accept Juror No. 650 who indicated that he could consider the entire range of penalties. It is not that a juror favors the use of the death penalty or disfavors it that will disqualify one as a juror. *Grooms v. Commonwealth,* Ky., 756 S.W.2d 131 (1988). The determination was not clearly erroneous or an abuse of discretion. *Simmons v. Commonwealth,* Ky., 746 S.W.2d 393 (1988).

■ Bowling was not denied a fair and impartial jury. The trial court provided

Bowling more than twice the number of peremptory challenges which are normally granted. RCr 9.40. The claim that the trial judge's refusal to excuse jurors for cause unfairly exhausted his peremptory challenges is without foundation.

## II

■ Bowling argues that prosecutorial misconduct during the guilt and penalty phases of this trial, deprived him of a fair and impartial trial. He claims numerous examples of alleged prosecutorial misconduct such as statements leading the jury to conclude that it would be the legislature and not they who imposed the death penalty; comments regarding parole; and "Golden Rule" violations. Bowling relies on *Clark v. Commonwealth*, Ky., 833 S.W.2d 793 (1992). We find no merit in his claims. Unlike the *Clark* situation, here the complained of remarks were made during the penalty phase and not the guilt phase of trial. The comments were far more limited than the comments made in the *Clark* case.

■ The closing arguments of the prosecutor during both phases of the trial did not deprive Bowling of a fair and impartial trial. During closing arguments of the guilt phase, the prosecution was discussing potential motive. It was stated, "We can't tell you what it is because only the man who pulled the trigger knows." Bowling claims this was a Fifth Amendment violation and interprets it as a comment on his refusal to testify. There was no direct reference to Bowling. Given the totality of the prosecution's closing argument, this statement, if indeed it was improper, was merely an inadvertent reference. It was not manifestly intended to reflect on the accused's silence or of such a character that the jury would naturally and necessarily take it as such. *Byrd v. Commonwealth*, Ky., 825 S.W.2d 272 (1992).

During the penalty phase, the prosecution repeatedly reminded the jury that it was they who had the ultimate responsibility for imposing a sentence. The responsibility of the jury for imposing the death penalty was not improperly minimized.

## III

■ Bowling contends that he was denied a fair trial and rational sentencing by the introduction of evidence which elicited sympathy for the victims during the guilt phase of the trial. The prosecutor is given wide latitude in closing argument. *Williams v. Commonwealth*, Ky., 644 S.W.2d 335 (1982). A prosecutor's statements must be viewed in the context of the entire trial. *Cf. United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). When several members of the victims' family exhibited emotional outbursts, the trial court took proper steps to limit these distractions. The record is void of examples where the impact upon the family of the victims created undue prejudice.

## IV

The defendant had no significant prior criminal history. Bowling claims the improper and incessant denigration of his mitigating evidence by the prosecutor deprived him of a reliable constitutionally obtained sentence. The prosecutor made only one objection during the closing argument of defense counsel. The prosecutor did nothing more than object and did not detail in front of the jury the basis for the objection. The trial judge overruled the objection. This objection certainly did not denigrate the specific mitigating circumstances presented by the defense. The prosecution's closing arguments presented its side of the argument to the jury. The conclusions drawn were supported by the evidence. We find no error in a prosecutor presenting an analysis of the facts which tend to show guilt. The jury remained free to determine on its own if that analysis met the burden of proof required for conviction.

## V

Bowling contends that the prosecution used conjecture and surmise to attribute the worst possible motives and inferences without any evidentiary basis in order to obtain a conviction. Therefore the conviction and the sentencing were based only on prosecutorial misconduct.

■ There is no error because the closing arguments by the prosecution were based

on the evidence and the reasonable inferences from the evidence. *Cf. Sanders v. Commonwealth*, Ky., 801 S.W.2d 665 (1990). They were within the reasonable latitude permitted during closing argument. *Cf. Lynem v. Commonwealth*, Ky., 565 S.W.2d 141 (1978). Bowling had the right to present a defense and request appropriate instructions. The trial judge was duty bound to instruct the jury regarding any relevant defense. Without facts which would tend to support a claimed defense, the trial judge properly refused to issue inappropriate instructions in this case.

## VI

■ Bowling argues that it was reversible error for the trial judge to fail to instruct on extreme emotional disturbance and manslaughter in the first degree. He claims that his allegedly bizarre behavior the weekend before the incident, together with the fact that he struck the victims' vehicle with his car before he opened fire, could have caused him to act uncontrollably.

We find this argument to be without merit because it would require the jury to speculate on evidence which is not in this record. This Court has repeatedly indicated that a defendant is not entitled to an extreme emotional disturbance instruction merely because he exhibits behavior akin to mental illness or the effects of substance abuse. *McClellan v. Commonwealth*, Ky., 715 S.W.2d 464 (1986).

Here, there was no evidence that Bowling's judgment was overcome on the morning of the killings, nor any evidence that he acted uncontrollably or as a result of anything other than an evil or malicious purpose. There was no excuse for his actions other than that he may have acted strange the preceding weekend and he may have suffered from alcohol abuse. There was no evidence presented from which the jury could ascertain the viewpoint of a person in Bowling's situation under circumstances as Bowling seemed to believe them to be simply because there was no evidence of what Bowling believed the circumstances were. There was no evidence of any reckless driving before his automobile collided with the Earley vehicle on the fatal

morning. There was no evidence of any reckless driving record introduced at trial.

There was also no evidence that he suffered any physical trauma when he rammed his vehicle into the victims' car that could lead a jury to suspect he was suffering from extreme emotional disturbance. All that is presented is a series of facts that simply do not amount to competent probative evidence which would require an instruction.

## VII

■ Bowling argues that the trial court committed reversible error in failing to properly guide the jury on the question of culpability for the homicide of the woman. There was testimony that the mother's fatal wounds could have been received from bullets that went through her husband which were intended for him. Evidence indicated that the weapon was fired from both sides of the victims' vehicle. Bowling was not prejudiced by the instruction given by the trial court and the jury was presented with ample evidence from which it could conclude that Bowling in fact intended to cause Tina's death. At trial, the defense made arguments opposing the theory of transferred intent. The judge did not find the theory applicable. There was no prejudice in the decision by the trial judge to sustain defense objections to the giving of transferred intent instructions at trial.

## VIII

Bowling contends that the trial judge should have conducted a hearing which comported with state and federal due process requirements when the defendant brought to the Court's attention his dissatisfaction with his defense team.

The trial judge acted within his sound discretion when he refused to declare a mistrial or appoint new counsel. Bowling did not complain of his trial counsel's performance until after the jury returned a guilty verdict. Bowling himself made neither timely nor specific objection to the defense provided by his three attorneys. No objection was made to the conduct of an immediate hearing by the trial judge which afforded the defendant an opportunity to express his dis-

satisfaction with the performance of his defense team. In addition, the trial judge permitted Bowling an opportunity to fully set forth the basis for his alleged dissatisfaction.

The trial judge properly ruled that Bowling failed to show any sufficient cause for discharging his attorneys. The trial judge determined that the trial strategy used by Bowling's counsel had a better chance of success than any of which the trial judge could think in light of the strong evidence of guilt presented by the prosecution.

## IX

■ Bowling maintains that the trial judge failed to clearly direct the jury to fully consider the defendant's mitigating evidence. He concedes that he was allowed to introduce a vast amount of evidence in mitigation and he does not claim that any mitigating evidence he wished to present was excluded. Bowling's claim of error is based on the trial court's failure to provide instructions regarding extreme emotional disturbance, mental disease or defect and intoxication. The trial judge's failure to provide these requested instructions was based on his finding that no reasonable juror could have so determined with the evidence presented. Bowling's claim that the trial judge erred by failing to specifically define requested nonstatutory mitigators is without merit. The jury was instructed to consider any and all mitigating factors which they found relevant. There is no requirement to enumerate each such nonstatutory factor in detail. There is nothing to suggest that the jury did not consider in their deliberations Bowling's claims of being a model inmate and of being a loving and caring father.

■ The jurors were properly instructed on their ability to consider mitigating evidence. The jury instructions provided for mitigating circumstances and instructed the jury to consider any other facts or circumstances which they considered mitigating or extenuating, even though they were not listed in the instructions. The jury instructions fully complied with what is constitutionally required. *Smith v. Commonwealth*, Ky., 599 S.W.2d 900 (1980). The requirement of individualized sentencing in all capital cases is satisfied by allowing the jury to consider all relevant mitigating evidence. *Boyde v. California*, 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990).

## X

■ An instruction on unanimous findings on mitigation is not required. *Cf. Skaggs v. Commonwealth*, Ky., 694 S.W.2d 672 (1985). The instructions only require the jury to consider mitigating circumstances. K.R.S. 532.025(2) requires specific findings beyond a reasonable doubt for aggravating circumstances which is not in this aspect of the case. Bowling's argument is without merit.

Bowling relies on *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988) to support his argument that the jury was not properly instructed regarding the use of mitigating factors. *Mills* is distinguished from Bowling's case because the wording of the instructions is totally different. The jury was well aware of the fact that any sentence must be a unanimous decision. Unlike in *Mills*, there was no requirement that they unanimously reach a conclusion regarding the application of any mitigating factor. Each individual juror was free to examine and react to any mitigating factor when determining the appropriate sentence. The instructions are in conformity with *Mills* because any juror who found any mitigating factor of sufficient relevance could individually use that fact to prevent the jury from reaching a unanimous sentence of death. Bowling's argument is without merit.

## XI

■ Bowling claims that the sentence of death is unconstitutional because the mitigating circumstances in this case greatly outweigh the sole aggravating circumstance. He attempts to minimize the fact that he committed two murders. He asserts that this Court is obligated under the Federal and Kentucky Constitutions and K.R.S. 532.075(3)(c) to determine whether the sentence of death is excessive considering both the crime and the defendant. Here the sentence of death for the double murders was not

excessive. The mitigating circumstances clearly do not outweigh the aggravating circumstance of multiple murders. *Matthews v. Commonwealth*, Ky., 709 S.W.2d 414 (1985); *Bevins v. Commonwealth*, Ky., 712 S.W.2d 932 (1986).

## XII

 Bowling argues that the imposition of two death sentences based on the same aggravating factor violates double jeopardy and renders both sentences invalid. He says the multiple murder aggravating circumstance, K.R.S. 532.025(2)(a)(6), was improperly used.

Once the jury determined that two of Bowling's acts of killing were intentional and resulted in multiple deaths, the multiple murder aggravating factor applied. *Simmons v. Commonwealth*, Ky., 746 S.W.2d 393 (1988).

## XIII

Bowling claims that in a double murder in which the only aggravating circumstance is intentional multiple murders, the imposition of the death penalty for either killing violates constitutional guarantees against double jeopardy.

Bowling's sentence was based on the murder of two different victims. In order to constitute multiple deaths, two killings are all that is necessary. Here there were two convictions and two sentences. K.R.S. 532.025 does not require that the defendant be punished for the same offense twice. The aggravating circumstances only determine whether the crime of murder shall carry the death penalty. *Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988).

## XIV

Bowling contends that the use of the same two murders in the guilt phase as the sole aggravating factor to impose a death sentence for both murders, fails to narrow the class of persons eligible for the death penalty and violates the constitutional prohibition against cruel and unusual punishment.

The *Lowenfield v. Phelps, supra,* case applies in this situation also. Only one aggravating factor need be shown beyond a rea-

sonable doubt to sustain a death sentence. *Simmons; See Bevins.* Here the death sentence is not disproportionate and it is not cruel and unusual punishment for the commission of double murders.

## XV

 Bowling again argues that the submission of a single instruction permitting the jury to make a single finding of an aggravating circumstance to support the imposition of two death sentences impermissibly narrowed the responsibility of the jury and renders the sentences invalid.

Here the one aggravating circumstance was multiple deaths. *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), approved the statutory system upon which the Kentucky statute is modeled. The aggravating factor of multiple murder was an essential part of the circumstances of the crimes which are before the jury in the penalty phase. Once the jury determined that two of the defendant's acts of killing were intentional and resulted in multiple deaths, the multiple aggravating factor applied to each of those killings.

## XVI

Bowling claims that the sentence of death should be set aside as being excessive and disproportionate to the penalty imposed in other cases.

This Court has always conducted a proportionality review pursuant to K.R.S. 532.-075(3)(c). Such a review does not indicate that this sentence of death is either excessive or disproportionate to the penalty proposed in other capital cases. Bowling argues that no other sentence of death has been imposed based upon the sole aggravating factor of two intentional murders.

The sentences imposed on Bowling were not inappropriate, arbitrary, discriminatory, unusual, cruel or disproportionate. The sentences were imposed because of the individual factors of the crimes of which he was found guilty as charged. Pursuant to K.R.S. 532.075, this Court has carefully reviewed the record and has determined that the death sentence was not imposed under the influ-

ence of passion, prejudice or any other arbitrary factor. The death sentences were not excessive or disproportionate to the penalty imposed in similar sentences since 1970 considering both the crime and the defendant. Those cases have been previously listed by this Court in *Simmons v. Commonwealth,* Ky., 746 S.W.2d 393 (1988), and that list is incorporated herein by reference. In addition, we have considered the cases of *Moore v. Commonwealth,* Ky., 771 S.W.2d 34 (1989); *Epperson and Hodge v. Commonwealth,* Ky., 809 S.W.2d 835 (1991); *Taylor v. Commonwealth,* Ky., 821 S.W.2d 72 (1991); and *Wilson v. Commonwealth,* Ky., 836 S.W.2d 872 (1992). Our review of this case is in accordance with K.R.S. 532.075(5). We have conducted an independent review of all the circumstances and conclude that they exceed any minimum threshold justifying capital punishment.

## XVII

Bowling states that his Federal and State constitutional rights will be denied by the manner in which the proportionality review is being done by this Court.

Again, the proportionality review includes the accumulated records of all felonies in which the death penalty was imposed after January 1, 1970.

## XVIII

Bowling claims that his inability to obtain access to K.R.S. 532.075(6) data deprives him of effective assistance of counsel. There is no merit to this frequently used argument.

## XIX

Bowling claims that the trial court violated his Sixth, Eighth and Fourteenth Amendment rights by failing to sequester the jury between the guilt and penalty phases.

The trial judge did not abuse his discretion in deciding not to sequester the jury. Such a decision is within the discretion of the trial judge. *Wilson v. Commonwealth,* Ky., 836 S.W.2d 872 (1992). RCr 9.66 does not require that jurors be sequestered between the guilt and penalty phases of the trial. Sequestration is required only after a felony case has been submitted to a jury for its verdict. In this case, the jury remained sequestered after the case was submitted for their verdict on the question of guilt until such time as they reached a verdict. Bowling has failed to demonstrate how he suffered any prejudice by the exercise of the discretion of the trial judge in this case.

## XX

The use of a video tape record does not constitute reversible error in a capital case. Bowling's allegation that the video tape record is incomplete is without foundation. He does not establish a single item of evidence which is not in the appellate record which would have been in the record if a written or typed record had been used. He alleges no specific prejudice resulting from the use of the video tape. He was not denied effective assistance of counsel because the matter was video taped rather than typewritten.

## XXI

This Court has consistently rejected arguments that execution by electrocution is cruel and unusual punishment.

## XXII

There is no evidence that Bowling was deprived of his constitutional right to a fair trial by the alleged cumulative effect of the claimed errors. He received a fundamentally fair trial.

The judgment of conviction is affirmed.

STEPHENS, C.J., and LAMBERT, REYNOLDS and SPAIN, JJ., concur.

LEIBSON, J., dissents by separate opinion in which BURKE, Special Justice, joins in part and files a separate dissenting opinion.

LEIBSON, Justice, dissenting.

Respectfully, I dissent from two sections of the Majority Opinion:

Section VI, failure to instruct on extreme emotional disturbance (EED) and Manslaughter I in the guilt phase; and

Section IX, failure to instruct on statutory mitigating circumstances (EED, mental disease or defect, and intoxication) in the penalty phase.

Under the evidence adduced at trial, there was no question about whether the appellant was guilty of criminal homicides. The issue presented by the evidence was whether there was sufficient proof that, when he killed, it was an act of sudden, uncontrolled rage to reduce the degree of the offenses from Murder to Manslaughter I at the guilt phase, or to mitigate against the death penalty at the penalty phase. The jury was never instructed on these diminished capacity issues. The judgment should be reversed and remanded for a new trial before a properly instructed jury.

The Majority Opinion fails to address the evidence presented on these critical issues. From this evidence the jury could have reasonably concluded that the appellant was already suffering from some significant degree of mental illness, diagnosed as severe depression and paranoia, and that he killed two strangers whom he happened upon purely by chance. His mother and sister testified to his bizarre behavior, suicidal comments, and depression ("Dottie Sue done left him again") leading up to the killings. There was evidence these mental problems had been exacerbated by drugs and alcohol.

Whether the motor vehicle collision which preceded the shooting was intentional or accidental is beside the point. Either way, a properly instructed jury could have reasonably believed the collision triggered the appellant into a sudden, irrational, uncontrollable rage that caused the shooting response, thus explaining killings that are otherwise without motive.

The Majority Opinion assumes "Bowling's auto crashed into the driver's side of the Earleys' vehicle" which was stopped in the parking lot, and this, rather than a collision on the street, triggered Bowling's rage. The only evidence to support this conclusion is photographs showing debris presumably from the wreck. This evidence of debris was not conclusive. If the collision occurred in the parking lot, why did the witnesses who heard the shooting not hear the collision as well? And more significantly, if the appellant's original intent, even before the collision, was to shoot the Earleys, why would he first damage his own vehicle by intentionally ramming into the Earleys' parked vehicle? If before he was under the influence of EED he had wanted to shoot the Earleys, he would simply get out of his car, go over to the Earleys' parked car, and shoot them; or, if intending only to kill Eddie Earley, he would simply wait until Earley started into his store and follow him in. There was no reasonable explanation for why the appellant, if not in a state of uncontrolled rage, would want to ram his car into the Earley parked car, thus doing considerable damage to his own in the process, before opening fire. Surely, at the least, the appellant was entitled to an instruction under which the jury could consider whether the shooting was a spontaneous reaction to uncontrolled rage from the motor vehicle collision, a reaction which would not have occurred otherwise, and then (if they so find) convict the defendant of the lesser charge of Manslaughter I, as they should do unless convinced beyond a reasonable doubt that the two events were unrelated.

Our Court has severely and unduly limited the effect of EED as evidence of diminished mental capacity at the guilt phase by our decision in *McClellan v. Commonwealth*, Ky., 715 S.W.2d 464 (1986) (Leibson, J., dissenting). We limit EED more than the Penal Code ever intended by requiring proof that the defendant acted "uncontrollably from the impelling force of the extreme emotional disturbance *rather than* from evil or malicious purposes" (*Id.* at 468–69). Emphasis added. The Penal Code does not require that EED must be the sole cause, or the exclusive reason, for the homicide before it applies, but the *McClellan* decision so requires. Actually, if EED must be the sole reason for the act, with no other "evil or malicious purposes" involved, EED does not differ materially from temporary insanity. To be found "under the influence" of EED· we should require, only a finding "it *contributes* to cause the act, rather than limiting its application to where it is an exclusive cause of the

criminal act." *McClellan, supra* at 474, Leibson, J., dissenting.

Nevertheless, even taking it as a given that EED must be the sole cause or the exclusive reason for the act at the guilt phase, statutory law plainly states that the penalty phase instruction requires a lesser degree of EED. The death penalty statute specifically defines what is required as a statutory circumstance mitigating against the death penalty in KRS 532.025(2)(b)(2), as follows:

> "The capital offense was committed while the defendant was under the influence of extreme mental or emotional disturbance even though the influence of extreme mental or emotional disturbance is not sufficient to constitute a defense to the crime[.]"

Moreover, the statute prescribing the procedure *orders* the trial judge to "include [this] in his instructions to the jury for it to consider." KRS 532.025(2). Even if my colleagues do not recognize that here there was prejudicial error in failing to instruct on EED in the guilt phase, surely they must do so in the penalty phase.

This defendant has been convicted of a senseless, unexplained and motiveless murder. If a sudden, compelling rage was not the only possible explanation, it was certainly a reasonable one, which suffices to submit the issue to the jury at the penalty phase when the death penalty is the issue. Yet this issue raised by the evidence was never presented by instructions to the jury.

Likewise, the penalty phase instructions erroneously omitted other statutory mitigating factors which are set out in KRS 532.025(2)(b)(7) as follows:

> "At the time of the capital offense, the capacity of the defendant to appreciate the criminality of his conduct to the requirements of law was impaired[1] as a result of mental illness or retardation or intoxication even though the impairment of the capacity of the defendant to appreciate the

criminality of his conduct or to conform the conduct to the requirements of law is insufficient to constitute a defense to the crime[.]"

Here, again, the statute requires there be evidence only that the defendant "was impaired." It does not require exclusive causation. Medical testimony regarding Bowling's mental illness and the degree of it, and lay testimony regarding his bizarre behavior and his excessive use of intoxicating substances, drugs and alcohol in the period leading up to the shooting, surely justified an instruction putting these mitigating factors in issue before the jury.

The prosecutor acknowledged these issues existed, stating in closing argument:

> "T.C. Bowling is not mentally ill. T.C. Bowling is mean. T.C. Bowling is one of those people. In my business I am aware of that because I prosecute people like that and not everyone recognizes it."

This argument not only recognizes the existence of the issues upon which the judge failed to instruct, it compounded the error by supplementing the evidence with the prosecutor's *personal* experience and opinion, which is obviously improper.

The Majority Opinion opines "[t]he jury instructions [on 'mitigating circumstances'] fully complied with what is constitutionally required," citing *Smith v. Commonwealth,* Ky., 599 S.W.2d 900 (1980).

*Smith* is inapposite. Unlike this case, in *Smith* the trial court specifically instructed on statutory mitigating circumstances at the penalty phase, providing instructions covering both "under the influence of extreme mental or emotional disturbance" and "impaired as a result of mental disease or defect or intoxication" even though not impaired sufficiently "to constitute a defense to the crime." *Id.* at 911. The very same instructions which this appellant complains were *not* given, were given in *Smith*. Furthermore, the death penalty judgment in *Smith* was

---

1. This is an obvious error in syntax originating in the L.R.C.'s original version in The Kentucky Acts and repeated when the statute was officially codified. The phrase no doubt intended is: "... to appreciate the criminality of his conduct *or to* *conform the conduct* to the requirements of law was impaired...." I have underlined the words erroneously deleted. The incomplete phrase is repeated in a complete form later on in the same sentence.

*reversed* because of an error in instructions, rather than affirmed, albeit it was reversed for a guilt phase error not presently involved.

As to the remaining issues in this case, I agree with the Majority Opinion that no prejudicial error occurred. However, I concur in results only because, with due respect, in my opinion the Majority Opinion insufficiently articulates the nature of the appellant's complaints, and fails to address them responsively.

KATHRYN BURKE, Special Justice, joins this dissent in part.

BURKE, Special Justice, dissenting.

Respectfully, I join Justice Leibson in that part of his dissenting opinion which deals with the failure to instruct on statutory mitigating circumstances (EED, mental disease or defect, and intoxication) in the penalty phase. I concur with that dissent in that the statutory law plainly states that the penalty phase instruction requires a lesser degree of Extreme Emotional Distress then is required for the guilt phase. I adopt Justice Leibson's dissent on this issue in regard to the penalty phase.

I also dissent from that part of the majority's opinion in regard to the allegations of prosecutorial misconduct. The remarks made by the prosecutor in this case are in substance the same as those criticized in *Clark v. Commonwealth*, Ky., 833 S.W.2d 793 (1991). If the arguments of the prosecutor were improper in Clark, they are improper here. The same reasoning set forth in *Clark*, is appropriate in this case.

Therefore, I would reverse this case and remand it to the Fayette Circuit Court for a retrial.

### ORDER DENYING PETITION
### FOR REHEARING

#### March 24, 1994

In this petition for rehearing, the petitioner asserts three points at which he feels this Court failed to adequately review his appeal of his sentence of death in the murders of a Fayette County man and woman and the wounding of their two-year-old son. The petitioner first claims that it was error for this Court not to reverse for failure of the trial court to give instructions on mitigating circumstances. On appeal this Court did fully review this issue, and stated that it was not error for the trial judge not to give such instructions where the evidence in no way supported the contention that the mitigators in question were present in petitioner's situation.

Second, petitioner contends that this Court failed to adequately review the trial court's failure to provide specific instructions to the jury on extreme emotional disturbance, mental disease or defect, and intoxication. We disagree with the petitioner and feel that this issue was fully reviewed using all applicable law, on appeal to this Court. It was held by this Court that there was not sufficient evidence in the record to support an instruction on extreme emotional disturbance in the guilt phase. Furthermore, there is nothing in the opinion of this Court to support the bald assertion by the petitioner that he was penalized for choosing not to testify.

Lastly, the petitioner claims that this Court incorrectly affirmed the manner in which the prosecution addressed the jury's role in imposing the death penalty and failed to apply *Clark v. Commonwealth*, Ky., 833 S.W.2d 793 (1991). We disagree. This issue was thoroughly reviewed and the precedent supplied by *Clark* was explored, but found inapplicable to this situation for reasons stated in our opinion.

It also has been brought to this Court's attention that page nine of our opinion may cause confusion as to which side requested a transferred intent instruction. The opinion seems to imply that the instruction was requested by the defense; in reality it was the Commonwealth that requested the instruction. Although the opinion is hereby modified by the substitution of a new page nine, there was no error at the trial court level.

Finding that this petition for rehearing brings to light no overlooked material fact from the record, reveals no controlling statute or decision that was misapplied, nor illuminates an issue or law that was miscon-

ceived on appeal, the petition for rehearing is denied.

It is so ORDERED.

STEPHENS, C.J., LAMBERT, REYNOLDS, SPAIN and WINTERSHEIMER, JJ., concur.

LEIBSON and STUMBO, JJ., would grant petition for rehearing.

ENTERED: March 24, 1994.

/s/Robert F. Stephens
ROBERT F. STEPHENS,
Chief Justice