Randy Winton HAIGHT, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 94–SC–288–MR.

Supreme Court of Kentucky.

Nov. 21, 1996.

Rehearings Denied March 3 and 27, 1997.

Allison Connelly, Public Advocate, Edward C. Monahan, Bobby C. Simpson, Assistant Public Advocates, Frankfort, for Appellant.

A.B. Chandler III, Attorney General, Kent T. Young, Assistant Attorney General, Criminal Appellate Division, Frankfort, for Appellee.

LAMBERT, Justice.

This appeal is from the final judgment of the Jefferson Circuit Court whereby appellant was sentenced to death for having murdered Patricia Vance and David Omer. He was also sentenced to concurrent terms of twenty years imprisonment for two counts of robbery in the first degree and five years imprisonment for possession of a handgun by a convicted felon.

There is no doubt that appellant committed the acts for which he has been held criminally responsible. Rather, upon numerous asserted grounds ranging from deprivation and mistreatment as a child to arbitrary application of the law, appellant claims exemption from the death penalty.

Some of appellant's contentions require thoughtful analysis while others merely urge reconsideration of settled law or are manifestly without merit. Some such issues will be addressed only briefly or not at all. *Stanford v. Commonwealth*, Ky., 734 S.W.2d 781, 792–93 (1987).

This is the third opinion from this Court reviewing judgments and orders arising out of these crimes. In *Haight v. Commonwealth*, Ky., 760 S.W.2d 84 (1988), appellant obtained reversal of his original death sentence on grounds that actions of the trial court had misled him into believing that there was a commitment from the court to impose a sentence other than death. Thereafter appellant came before this Court seeking an extraordinary writ to require enforcement of the original plea agreement and to prevent any effort to secure the death penalty on grounds that such would amount to prosecutorial vindictiveness. *Haight v. Williamson*, Ky., 833 S.W.2d 821 (1992). We denied appellant's claims in this regard and other matters upon which he sought review were not addressed. As a result of our decisions arising out of appellant's previous appearances here, the law of the case doctrine will have substantial application. Such matters as have been considered and resolved in the prior cases will not be modified in this proceeding.

A final decision of this Court, whether right or wrong, is the law of the case and is conclusive of the questions therein resolved. It is binding upon the parties, the trial court, and the Court of Appeals. It may not be reconsidered by prosecuting an appeal from a judgment entered in conformity therewith.

*Williamson v. Commonwealth,* Ky., 767 S.W.2d 323, 325 (1989) (quoting *Martin v. Frasure,* Ky., 352 S.W.2d 817, 818 (1961)).

The essential facts are that after having escaped from the Johnson County Jail, in the course of committing first degree robbery, appellant inflicted multiple gunshot wounds upon the victims and thereby caused them to die. After a change of venue from Garrard County to Jefferson County, appellant was tried, convicted and sentenced to death and terms of imprisonment as aforesaid. Such additional facts as may be necessary will be presented in the discussion of each claim of error.

■ Appellant claims entitlement to a new trial on grounds that juror Helton engaged in misconduct by failing to make full disclosure during voir dire, by prematurely deciding contested issues, and by possibly furnishing proscribed information to other jurors. This claim arises from the fact that prospective juror Helton read a newspaper article concerning the case prior to reporting for jury duty. According to his testimony, this juror scanned the article but did not remember the headline which revealed that appellant had been previously sentenced to death.

Initially it should be observed that during voir dire the prospective juror acknowledged that he had seen the article, recalled the names of the victims, and indicated that he had little recollection otherwise about what was contained in the article and in the headline. In addition, this prospective juror indicated an independence of thought and a determination to fairly try the case. No motion was made to exclude the juror for cause and no peremptory challenge was used to remove him. He was seated and participated in the verdict.

In response to appellant's motion for a new trial, the trial court held a hearing relating to this juror and allegations that he had withheld critical information. At the conclusion of the hearing, the trial court rendered findings of fact which are not clearly erroneous and which reveal no abuse of discretion. *Parsley v. Commonwealth*, Ky., 321 S.W.2d 259 (1959); *Johnson v. Commonwealth*, Ky., 892 S.W.2d 558 (1995); and *Combs v. Commonwealth*, Ky., 356 S.W.2d 761 (1962). We deem it appropriate to quote the trial court at length:

> As to juror Helton, the court finds specifically that juror Helton answered questions truthfully both on voir dire and at the March 7th hearing when he was called subsequent to the jurors' verdict. A finding that he answered questions truthfully leads the court to the conclusion that that evidence certainly is credible. The juror says: I had scanned the article. I do not remember the headline ...
>
> This is voir dire examination: I do not remember the headline. I do not remember the details except that two people— there were two murders and some robberies and I remember the names Omer and Vance as being the names of the parties involved.
>
> The court has no reason to believe that at that time Mr. Helton recalled anything else. He says that as the trial progressed, ... some of the article came back to him. I don't find that to be extraordinary in human experience that a repetition of some matters may cause us to remember other things by association. I'm glad that's true; otherwise, I wouldn't remember anybody's name, particularly at this stage in my life. With that in mind, I specifically find that Mr. Helton's testimony is credible. He did not display a bias, and for that reason overrule that portion of the motion for a new trial dealing with that testimony. There was no deliberate concealment on his part of information which would compel this court to reach a conclusion that he was partial.

We can hardly conceive of a circumstance in which greater deference should be granted to the findings of the trial court. It is appropriate to recall that the trial judge personally conducted much of the voir dire examination and presided over all of it. He presided over the trial and likewise presided over the post-trial hearing on the motion for new trial. The trial judge was immersed in the case and it would be utterly extraordinary for an appellate court to disregard his view as to questions of candor and impartiality of a juror. *Riley v. Commonwealth*, Ky., 271 S.W.2d 882 (1954).

█ On this point we accept the view expressed in *United States v. Klee*, 494 F.2d 394 (9th Cir.1974) (citing *United States v. Goliday*, 468 F.2d 170, 171 (9th Cir.1972)), that "[w]hen a wise and experienced judge, who presided at the trial and observed the jury, comes to such a conclusion, it is not for us to upset it. The trial judge 'was in a better position than we are to determine whether what happened was prejudicial.'" *See also McQueen v. Commonwealth*, Ky., 721 S.W.2d 694, 698 (1986). Our decision in *Byrd v. Commonwealth*, Ky., 825 S.W.2d 272 (1992), stands for the proposition that exposure to newspaper accounts of trials in progress does not automatically require reversal. "It was not reversible error for the trial judge to deny Byrd's motion for a mistrial because not every incident of juror misconduct requires a new trial. The true test is whether the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." *Id.* at 274–75. Numerous other cases hold that in ruling on motions of this type, great deference should be given to the views of the trial court.

This case is a far cry from *Paenitz v. Commonwealth*, Ky., 820 S.W.2d 480 (1991), in which a prospective juror withheld the information that she had talked with a key witness for the Commonwealth about the case. This case also differs from *Randolph v. Commonwealth*, Ky., 716 S.W.2d 253 (1986), where the juror failed to reveal that she was employed by the Commonwealth's Attorney and where we held that despite the disclaimer of bias, implied bias was shown by virtue of the relationship. There was no such error in the trial court's ruling with respect to juror Helton.

We have examined appellant's contentions with respect to juror Nichols and find them to be insubstantial. The transcript reveals no misunderstanding concerning the death of the police officer or disclosure to other jurors. This juror was given enough information during voir dire to have led to a mistaken belief on her part. Her post-trial testimony is without any hint of dishonesty.

■ As to juror Gaugh, much is made of his apparent knowledge that a police officer had been killed when, in fact, he was properly informed only that a police officer had been fired upon. We are told that this is more than enough to compel the inference that Gaugh concealed vital information. As the evidence in this regard was ambiguous, as it is likewise with respect to each of these jurors, we will rely upon the trial court for the reasons stated hereinabove and as follows: "It is pretty clear that they [the questioned jurors] had no information which would cause the court to believe that they were in any way partial in their deliberations or their final conclusions."

■ Appellant also claims a violation of RCr 9.36 and the doctrine of randomness of jury selection in the manner of selecting the jury and alternates who tried the case. After challenges for cause and peremptory challenges had been exercised, there remained seventeen prospective jurors. As the trial court had determined to conduct the trial with twelve jurors and two alternates, it was necessary to reduce the number from seventeen to fourteen. Initially the clerk who was charged with this duty drew three names written on pieces of paper from the seventeen. When this procedure was questioned, the three names were returned to the group and then fourteen sheets of paper were drawn. Remarkably, on both occasions the same three prospective jurors were excluded. Based on the improbability of such an occurrence, appellant cries foul and asks this Court to infer impropriety.

Initially we must state that there is no evidence upon which any impropriety may be inferred. Moreover, the procedure initially employed, i.e. drawing a sufficient number to reduce the jury to the number required by law, is permitted by RCr 9.36(2). As such,

the re-draw, which produced a jury consisting of the same persons, was merely redundant. Finally, our review of the claims in this regard reveals substantial compliance with the rules relating to jury selection and certainly no error of sufficient gravity to overcome the trial court's discretion with respect to a new trial. *Williams v. Commonwealth*, Ky.App., 734 S.W.2d 810 (1987).

In addition to the jury issues discussed hereinabove, appellant has raised questions concerning jurors Hansen, Ireland, Huffman, Nestmann and Gaugh. He has also questioned the post-discharge behavior of an alternate juror and complained that the court coerced a penalty phase verdict. This Court has carefully considered each of these claims of error and determined that as to each, there was no preservation of the question or that the ruling was within the sound discretion of the trial court. On the unpreserved claim that a verdict was coerced, the record simply fails to bear out such an assertion. At no time did the jury report that it was deadlocked. In view of the gravity of the decision before the jury, the time spent in deliberation was not excessive and we discern no violation of those decisions which proscribe coercion of jurors into rendering a verdict. *Abbott v. Commonwealth*, Ky., 352 S.W.2d 552, 554 (1961), and *Earl v. Commonwealth*, Ky.App., 569 S.W.2d 686, 688 (1978).

■ Appellant claims error in the trial court's failure to give a specific instruction directing the jury to consider evidence of his childhood abuse and neglect and deprived family background. While appellant was permitted to introduce extensive evidence in this vein, the instruction by which the jury could give effect to such evidence was general and authorized the jury to consider "any other circumstances arising from the evidence which you the jury deem to have mitigating value." Appellant maintains that this instruction fails to meet the requirements of *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

In *Penry* the Court reviewed the Texas capital punishment statute and, with regard to non-statutory mitigating factors, determined the statute to be insufficient. The

Court observed that despite evidence and argument relating to the appellant's mental retardation and abused background, the jury was given no vehicle by which it could express the view that a sentence of less than death was appropriate. It appeared that upon giving affirmative answers to questions required to be propounded, the jury was virtually mandated to impose the death penalty and lacked a vehicle by which to give effect to the background evidence. "The jury was never instructed that it could consider the evidence offered by Penry as *mitigating* evidence and that it could give mitigating effect to that evidence in imposing sentence." *Id.,* 492 U.S. at 320, 109 S.Ct. at 2947.

The instructions given here imposed no such restriction and rather invited the jury to broadly review the evidence for circumstances it deemed to have mitigating value. The admission of evidence relating to abuse and neglect, deprived background, and mental retardation, followed by argument of counsel as to the significance of such evidence and the instruction described hereinabove could have left no doubt in the mind of the jury that it had a right to consider such evidence in its penalty determination. A more specific instruction was not required. *Bowling v. Commonwealth,* Ky., 873 S.W.2d 175 (1994); *Halvorsen v. Commonwealth,* Ky., 730 S.W.2d 921 (1987); *Tuilaepa v. California,* 512 U.S. 967, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994); *Boyde v. California,* 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990).

Appellant's claim with respect to the alleged failure of the instructions to give guidance on the application of extreme mental or emotional disturbance is without merit. The penalty phase instruction as given on this point was clear that the extent of such disturbance need not rise to the level of that which would constitute a defense to the crime. This was sufficient to inform the jury that the definition of extreme emotional disturbance given during the guilt phase had no application to the extreme mental or emotional disturbance instruction in the penalty phase. The instruction given came directly from the statute, KRS 532.025(2)(b)(2).

■ Appellant next contends that the trial court improperly required proof beyond a reasonable doubt that he acted under extreme emotional disturbance (EED) in its first degree manslaughter instruction. Appellant claims that upon failure of the Commonwealth to prove the absence of EED in connection with the murder charge, the law results in a determination of guilt of first degree manslaughter. His argument is as follows:

> Not acting under EED is a negative essential element of murder. KRS 507.020. If the prosecution fails to prove that negative essential element, a defendant is guilty of first degree manslaughter.

The murder and first degree manslaughter statutes go hand in hand. Under the murder statute, if one commits the act while not under the influence of EED, he is guilty of murder. Under the manslaughter statute, if he does the same act while under the influence of EED, he is guilty of manslaughter in the first degree. Thus, depending on the finding of the jury with respect to the absence or presence of EED, the same act may justify a conviction of murder or a conviction of manslaughter. While the murder statute includes EED as a positive element, i.e. "... because he [positively] acts under the influence of extreme emotional disturbance ...," in circumstances where there is evidence from which the jury could find EED but would not be required to so find, it is entirely reasonable to submit both offenses to the jury for its finding. That was precisely what happened here. Conviction of murder was authorized if there was no EED and a conviction of manslaughter was authorized if there was EED. As the absence or presence of EED is an element of both statutes, there was no error in the inclusion of such and requiring its determination beyond a reasonable doubt.

The instructions tendered by appellant omit the mention of EED with respect to first degree manslaughter. These tendered instructions set forth the elements but lack any mention of the mental state which distinguishes it from murder. If the instructions tendered by appellant had been given, the jury might well have been misled to the

absurd conclusion that appellant's acts could constitute only manslaughter in the first degree. In any event, however, when the jury found that appellant committed the acts while not under the influence of EED, a conviction of first degree manslaughter was precluded. A person cannot at once be not under the influence of EED and under the influence of EED. Such mental states are utterly inconsistent and a finding of one precludes the other. As such, if there was error with respect to the manslaughter instruction, it was rendered harmless by the jury verdict.

Appellant's claim that the trial court erred in failing to inform the jury that its decision with respect to mitigation did not have to be unanimous was fully resolved in *Bowling v. Commonwealth*, Ky., 873 S.W.2d 175, 180 (1994). We discern nothing about this case which differs materially in that respect from *Bowling*.

Appellant's claim concerning the exclusion of evidence relating to his parole eligibility upon a previous criminal conviction was irrelevant and properly excluded.

Appellant's argument with respect to the order of presenting the instructions to the jury is utterly without merit and deserves no further comment.

■ Appellant next complains that the structure of the verdict forms "funneled" the jury toward imposing an enhanced punishment, i.e. life without parole for twenty-five years or death upon its finding of aggravating circumstances, thereby effectively precluding the jury from imposing a punishment of twenty years to life. While we understand appellant's contention in this regard and believe better practice would dictate a modification of the standard verdict forms, in this case there was no prejudice.

First, the authorized punishments unmistakably informed the jury that a term of twenty years to life was available as to each count of murder. Second, in the reasonable doubt instruction, the jury was told that if it had such a doubt as to whether the defendant should be sentenced to death, then it should sentence him to imprisonment. Third, and most significantly, the jury passed over the verdict form which authorized it to find aggravating circumstances and then impose a punishment of life without parole for twenty-five years. Instead the jury went to the death verdict form and, after finding aggravating circumstances, imposed the death penalty.

It would be irrational to suggest that the jury would have sentenced appellant to a term of twenty years to life, but on the mistaken belief that it could not so sentence him, disregarded the option of sentencing him to life without parole for twenty-five years and then gave him the death penalty.

The dissenting opinion in *Thomas v. Commonwealth*, Ky., 864 S.W.2d 252 (1993), is critical of the structure of the verdict forms used here. However, the majority opinion saw no reversible error and, while we now believe better practice would dictate modification of the verdict form to more forthrightly tell the jury that it may find aggravating circumstances but still impose punishment of twenty years to life, there was no reversible error in this aspect of the instructions in this case.

Appellant's claim that a twenty-year-old mental health evaluation discovered during trial would have affected the case is without merit. Appellant had full benefit of mental health evaluations and experts and there was no abuse of discretion in the trial court's failure to order another such examination. Moreover, the trial court gave all proper consideration to the mitigating evidence prior to imposition of its final judgment.

Appellant's additional claims of error with respect to the instructions have been reviewed and found to be without merit.

■ In a multi-faceted attack upon his conviction and death sentence, appellant claims exemption from the death penalty by virtue of the 1986 plea agreement after which he was sentenced to death but which was subsequently reversed on appeal. He claims, *inter alia*, that by virtue of actions of the state, a non-death sentence is required; that he is entitled to specific performance of the 1986 plea agreement; and that the death penalty has been imposed in an arbitrary, freakish, discriminatory and disproportionate manner. We will address the issues present-

ed by appellant to the extent we deem it to be necessary but will not respond to every minute point raised.

Any analysis of these issues must begin with *Haight v. Commonwealth*, Ky., 760 S.W.2d 84 (1988), and it should be reiterated that the law of the case doctrine precludes relitigation of matters settled therein. In *Haight v. Commonwealth*, this Court reversed appellant's death sentence. In the opinion we detailed the negotiations between the attorney for the Commonwealth and defense counsel which led to entry of the guilty plea.

We reversed the final judgment on grounds that when he entered the guilty plea, appellant was misled into believing that the trial court had committed itself to sentence him in accordance with the Commonwealth's recommendation. We noted, however, that appellant, by counsel had pressured the trial court in the direction of making such a commitment, but that the trial court had refused. Parenthetically, we observe here that at that stage of the proceedings, any such commitment from the trial court would have been unlawful. *Commonwealth v. Corey*, Ky., 826 S.W.2d 319 (1992). We rejected appellant's contentions, however, that the trial court had indeed made such a commitment and held *Johnson v. Commonwealth*, Ky., 609 S.W.2d 360 (1980), and *Workman v. Commonwealth*, Ky., 580 S.W.2d 206 (1979), to be inapplicable. However, we did find statements by the trial court sufficient to result in a commitment to permit withdrawal of the guilty plea in the event sentence was not imposed in accordance with the agreement. Effectively, we enforced the agreement to permit appellant to withdraw his guilty plea after the trial court had determined that a death sentence would be appropriate. We wiped the slate clean of the defective guilty plea negotiations and trial court sentence and restored the status quo immediately after the indictment. "For the foregoing reasons the final judgment of the trial court and the trial court's order of May 8, 1986, accepting appellant's guilty plea are vacated. All charges in the indictment as originally returned by the Grand Jury are reinstated and this cause remanded to the trial court for a plea to the crimes charged." *Haight v. Commonwealth*, 760 S.W.2d at 89.

At this juncture, it is also appropriate to review our decision in *Haight v. Williamson*, Ky., 833 S.W.2d 821 (1992), for it, too, is the law of the case and is also controlling. *Haight v. Williamson* rejected appellant's arguments that he was entitled to specific enforcement of the original plea agreement and that the Commonwealth acted in a vindictive manner when it sought the death penalty following reversal on appeal. The Court noted that the Commonwealth had lived up to its bargain with respect to presenting the recommended sentence throughout the initial proceeding. Thus, we held *Workman v. Commonwealth*, Ky., 580 S.W.2d 206 (1979), and *Commonwealth v. Reyes*, Ky., 764 S.W.2d 62 (1989), to be inapplicable. Holding that no prosecutorial vindictiveness had been shown, the Court relied on the remand language in *Haight v. Commonwealth* which directed the parties to start over. *Haight v. Williamson* resolved against appellant the contention that the Commonwealth is forever bound by the original agreement and that vindictiveness was shown by the Commonwealth when it subsequently sought the death penalty. We fully embraced the view that all prior negotiations and all prior agreements and judgments were vacated in favor of a new beginning.

We deem it unnecessary and improper to reconsider herein matters which have been so firmly settled in our previous opinions. Review of our prior decisions reveals no error which needs correction, and appellant's arguments will be considered only in light of what remains after our holdings as aforesaid are applied.

In his brief and at oral argument, appellant has vehemently contended that the fact of his death sentence following his guilty plea has placed him in a class by himself due to the subsequent change in RCr 8.10 which permitted withdrawal of guilty pleas on failure of the court to approve the agreement. Again and again we have been bombarded with the words "arbitrary, freakish, discriminatory and disproportionate," terms which have little analytical force and serve only to elevate the decibel level of the discussion.

By the 1989 amendment of RCr 8.10, upon the determination of a trial court that it will not follow the plea agreement made between the prosecutor and the defendant, the defendant has a right to withdraw the guilty plea without prejudice to the right of either party to go forward from ·that point. *Commonwealth v. Corey*, Ky., 826 S.W.2d 319 (1992). At the time of appellant's original guilty plea there was no such rule and upon a guilty plea, the only requirement upon a trial court was to sentence within the range provided by law. In *Haight v. Commonwealth* this Court determined that the plea agreement was fundamentally flawed. We believed the trial court made statements from which the defendant could have believed a commitment to a life sentence had been made. We corrected the trial court error and directed the parties to go back to the point of beginning and start all over. While RCr 8.10 as amended, effective August 28, 1989, had not yet been promulgated, we applied legal principles which had the same effect as the post-amendment RCr 8.10. Upon rejection of the plea agreement by the trial court, we directed the parties to start over, with the result being precisely what RCr 8.10 as amended would have yielded.

Appellant's argument that his predicament is unique would be persuasive if the original judgment had been affirmed but the rule thereafter changed. Then, indeed, only he would have been subjected to a death sentence pursuant to a guilty plea where the trial court had refused to impose the agreed-upon punishment. In fact, and despite his argument to the contrary, appellant's predicament is no different than other persons who have negotiated non-death sentences but failed to obtain trial court approval and who were thereby forced to withdraw their guilty pleas and go to trial.

Appellant further contends that by virtue of the conduct of the trial court as described in *Haight v. Commonwealth*, he was denied his right to have the jury fix punishment, a right secured by RCr 9.84 and recognized in *Commonwealth v. Johnson*, Ky., 910 S.W.2d 229 (1995). Under this theory, by virtue of having been misled, appellant's right to have a jury determine guilt and punishment, or depending on his election, punishment only, with the Commonwealth being bound by the agreement not to seek the death penalty, was irretrievably lost. Appellant reasons that if a jury had been empaneled when he asked for it, a point in time after the trial court had found death to be appropriate but prior to imposition of the death penalty, the Commonwealth would have been bound by virtue of *Workman v. Commonwealth*, Ky., 580 S.W.2d 206 (1979), and *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), to uphold its part of the bargain and refrain from asking for the death penalty. As such, appellant maintains there was irreparable prejudice by virtue of the flawed 1986 guilty plea.

While this argument is not without appeal, it must fail for various reasons. First, it was appellant who moved for relief in the 1986 case in the form of a motion to withdraw his guilty plea. Under the former and then prevailing version of RCr 8.10, whether a guilty plea could be withdrawn was within the trial court's sound discretion. Nevertheless, on appeal this Court granted appellant exactly the relief he had sought in the trial court. Upon the belief that appellant had been misled by statements of the trial court, we vacated the final judgment and restored the status quo immediately post-indictment. Thereafter, appellant received a jury trial as to guilt and punishment. While the jury trial he received was not at the time and place and under the circumstances he now insists upon, he was accorded his rights consistent with his demand.

When all is said and done and after the over-wrought and repetitious arguments of appellant have been put in perspective, it is clear that what he really wants and believes himself entitled to is enforcement of the original agreement. On at least three prior occasions, this Court has said no to enforcement of the original agreement and in this opinion we say it again. The flaw in the Garrard Circuit Court proceeding was in the trial judge's failure to keep his distance from the plea negotiations with the result being that appellant was misled as to the trial judge's intentions. We corrected that error and re-

stored appellant to all the rights he had prior to the guilty plea.

■ Appellant's double jeopardy claim has been reviewed and determined to be without merit. The essence of this claim is that upon the prior guilty plea and death sentence, jeopardy attached. Because RCr 9.84 precluded imposition of the death penalty, the argument goes, appellant was "implicitly acquitted."

The error of the trial court was not of the type and kind which precludes re-prosecution. *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). The conduct of the trial court was ambiguous and misleading by virtue of a desire to accommodate counsel for both sides. There was no indication of malicious or deliberate misleading. The trial court simply made an error which was corrected on appeal. Double jeopardy principles do not preclude further prosecution with all lawful punishments being available. *United States v. Ball,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). In *Simpson v. Commonwealth,* Ky., 759 S.W.2d 224 (1988), we answered appellant's double jeopardy claim as follows:

> It was appellant who moved the court to withdraw his guilty plea and his confession made during the plea proceeding. Such constitutes a waiver of his constitutional protection against double jeopardy for the purpose of trial on the charge in the indictment.

*Id.* at 228.

■ Appellant next attacks the judgment on grounds that his trial was "polluted ... with irrelevant and immaterial collateral bad acts." He contends, among other things, that such bad acts precluded a "meaningful opportunity" to present his EED defense to an open and receptive jury. Particularly he has identified evidence of his attempted murder of Trooper Yates; evidence as to the circumstances surrounding his guilty plea to that crime; evidence as to his theft of a farm hand's Camaro automobile while he was a fugitive; evidence of the burglary of the Shuffet home; evidence as to Tony Minnix's fear of appellant; and evidence of appellant's theft of the Sasser vehicle.

It should be remembered that at trial appellant's defense was extreme emotional disturbance and it was the Commonwealth's burden to prove the absence of EED. While the relevant time frame for proof of appellant's mental state was the time of the murders, evidence as to his mental state shortly before and after the murders was relevant. The Commonwealth maintains that from the time of appellant's escape from the Johnson County Jail until the time of his capture, his behavior amounted to a continuing course of conduct with all events being inextricably intertwined with the crimes charged. There was a legitimate basis in evidence law for admission of each such item of evidence and it was for the trial court to determine whether the probative value outweighed the prejudicial effect.

It is difficult to ignore that after his escape from the Johnson County Jail appellant went on a crime spree and along the way murdered two victims. We have found no basis to disturb the trial court's rulings on the admission of the challenged evidence. *Caldwell v. Commonwealth,* Ky., 503 S.W.2d 485 (1972), and *Stanford v. Commonwealth,* Ky., 793 S.W.2d 112 (1990). Moreover, any error in this regard would have been entirely harmless. We have carefully examined appellant's claims as set forth hereinabove and considered KRE 404(b) and this Court's decision in *O'Bryan v. Commonwealth,* Ky., 634 S.W.2d 153 (1982). We are unable to find an abuse of trial court discretion in this regard. *Dunbar v. Commonwealth,* Ky., 809 S.W.2d 852 (1991).

Appellant's complaints concerning the cross-examination of Randy Wheeler and the rebuttal testimony of Pamela Marcum are insubstantial and need not be addressed. Likewise, as to introduction of the three crime scene photographs, there was no error. *Gall v. Commonwealth,* Ky., 607 S.W.2d 97 (1980).

■ Appellant contends that the Commonwealth coaxed the jury into sentencing him to death by arguing future dangerousness. Excerpts of the prosecutor's penalty phase summation which contained ample references to appellant's other criminal convic-

tions have been provided. The Commonwealth responds that the arguments were based upon appellant's unique individual criminal history and that they established that he had not benefitted from previous incarceration.

Contrary to appellant's argument, we do not believe this amounted to use of a nonstatutory aggravator. Appellant's extraordinary history of violent criminal conduct was properly placed before the jury. KRS 532.025(2)(a). Moreover, while the "prison is doing nothing" argument by the Commonwealth is of concern, it falls short of the argument condemned in *Perdue v. Commonwealth*, Ky., 916 S.W.2d 148 (1996), whereby the jury was exhorted to give the death penalty as the only way to prevent the defendant from killing again. The argument here is qualitatively different from the argument condemned in *Ice v. Commonwealth*, Ky., 667 S.W.2d 671, 676 (1984). This Court has long observed the principle that wide latitude is permitted during closing argument. In view of this principle and upon our further belief that any error which may have occurred in this regard was harmless, there are no grounds for reversal on this issue.

Appellant's unpreserved claim of improper argument designated "Death as Deterrent" does not rise to the level of palpable error. The views set forth hereinabove sufficiently answer these contentions.

■ There was no error in the Commonwealth's introduction, pursuant to KRS 532.025, of appellant's criminal convictions which occurred and became final subsequent to his commission of the instant offenses. Our decision in *Templeman v. Commonwealth*, Ky., 785 S.W.2d 259 (1990), allows the introduction of such final convictions:

[T]he trial judge was correct in allowing the prosecution to introduce evidence of prior criminal convictions which occurred subsequent to the commission of the crime. The term prior is the status of the defendant at the time of sentencing, not at the

time of the commission of the charged crime.

*Id.* at 260.

■ Appellant's complaint concerning the trial court's failure to timely file a trial judge's report as required by KRS 532.075(1) fails to reveal grounds for reversal. As appellant has acknowledged, the report was filed. It appears that the court gave appropriate consideration to the aggravating and mitigating evidence and otherwise complied with the statute. *Epperson v. Commonwealth*, Ky., 809 S.W.2d 835 (1991), and *Sanders v. Commonwealth*, Ky., 801 S.W.2d 665 (1990).

For his final claims of error, appellant has attacked various aspects of the Kentucky death penalty statute and asserted, among other things, that the Act is unconstitutional. We have answered appellant's contentions in this regard on numerous occasions including *Sanders v. Commonwealth*, Ky., 801 S.W.2d 665 (1990); *Smith v. Commonwealth*, Ky., 734 S.W.2d 437 (1987); and *Gall v. Commonwealth*, Ky., 607 S.W.2d 97 (1980). As such, we will not reiterate those discussions.

■ Notwithstanding appellant's failure to preserve his right to a proportionality review, we will address this issue in obedience to the requirements of KRS 532.075. In *Stanford v. Commonwealth*, Ky., 734 S.W.2d 781, 793 (1987) (relying on *Matthews v. Commonwealth*, Ky., 709 S.W.2d 414, 424 (1985)), we recognized the difficulty of comparing one murder case with another, but declared that death for the crime committed in *Stanford* was neither excessive nor disproportionate to the penalty imposed in similar cases. Here, we have determined that the sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor. The evidence of record clearly supports the jury's finding of statutory aggravating circumstances as enumerated in KRS 532.025(2) and we have determined that the sentence of death in this case is neither excessive nor disproportionate to the penalty imposed in similar cases considering both the crime and the defendant.[1] In addition to

1. In *Sanders v. Commonwealth*, Ky., 801 S.W.2d 665 (1990), n. 10, this Court listed all cases in which the death penalty was imposed after January 1, 1970. We incorporate that list herein by reference and further state that we have noted a particular similarity between this case and

the cases cited in *Sanders v. Commonwealth*, Ky., 801 S.W.2d 665 (1990), we have also considered *Epperson v. Commonwealth*, Ky., 809 S.W.2d 835 (1991); *Sanders v. Commonwealth*, Ky., 801 S.W.2d 665 (1990); *Wilson v. Commonwealth*, Ky., 836 S.W.2d 872 (1992); *Bowling v. Commonwealth*, Ky., 873 S.W.2d 175 (1994); *Sanborn v. Commonwealth*, Ky., 892 S.W.2d 542 (1995); and *Bussell v. Commonwealth*, Ky., 882 S.W.2d 111 (1994), decisions rendered since 1990. We have reviewed all claims of legal error identified by appellant and concluded that no error or accumulation of error substantially prejudiced appellant's rights. From the evidence, there is no doubt that appellant committed the crimes of which he has been convicted and for those crimes the punishment imposed was entirely appropriate.

Accordingly, we affirm the convictions and sentences including the sentences of death.

STEPHENS, C.J., and BAKER, GRAVES, LAMBERT, STUMBO, and WINTERSHEIMER, JJ., concur.

KING, J., not sitting.

*McQueen v. Commonwealth*, Ky., 669 S.W.2d 519 (1984), *Sanders v. Commonwealth*, Ky., 801 S.W.2d 665 (1990), and *Epperson v. Common-* *wealth*, Ky., 809 S.W.2d 835 (1991), cases in which the death penalty was imposed and which have been affirmed on appeal.