Frankie COVINGTON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2007–SC–000773–MR.

Supreme Court of Kentucky.

Aug. 27, 2009.

Rehearing Denied Nov. 25, 2009.

Shannon Renee Dupree, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, Courtney J. Hightower, Assistant Attorney General, Office of Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice VENTERS.

Appellant, Frankie Covington, was indicted by the Bourbon County Grand Jury, and charged with one count of kidnapping, one count of first-degree sexual abuse, one count of resisting arrest, and for being a persistent felony offender (PFO) in the first-degree. After pleading guilty to all charges, the trial court fixed his sentences as follows: twenty years for kidnapping, enhanced to life imprisonment under the PFO charge; five years' imprisonment for sexual abuse; and twelve months for resisting arrest. Claiming that the trial court erred when it denied his motions to withdraw his guilty plea, he appeals to this

Court as a matter of right. Ky. Const. § 110(2)(b). We reverse the final judgment and remand for further proceedings consistent with RCr 8.10.

Appellant's case was scheduled for trial on April 18, 2007. That morning, as the jury panel waited in the courtroom, the judge met with Appellant, his attorney, and the attorney for the Commonwealth. Appellant's counsel was advised by the Commonwealth that in return for a guilty plea, the prosecution would recommend a sentence of twenty years' imprisonment. As a result, Appellant tendered to the court a written and signed motion (AOC form 491) to enter a guilty plea to all charges. The judge advised Appellant that, under the court's local rules, a plea entered on the day of trial would be an "open plea" or "blind plea." The judge then conducted the proper colloquy to determine if the plea should be accepted. Appellant stated that he understood the charges against him, his constitutional rights, the possible penalties, and any possible defenses. In response to questioning by the trial court, Appellant also affirmed the following under oath: that he had legal counsel who had explained his rights and the consequences of the plea; that he had a general education degree; that he was satisfied with the services of his legal counsel; that he was not under the influence of any drugs or alcohol, except for prescribed medications that had not, in the past, created any difficulties in his decision making and were not, at the present time, limiting his ability to understand the proceedings; and that he acknowledged his understanding that the court was not bound by the recommendation of the Commonwealth. The trial court accepted his plea, ordered a presentence investigation, and set a date for final sentencing.

On May 1, 2007, before the final sentencing date, Appellant moved to withdraw his guilty plea, stating that the medications he took at the time of the plea rendered him incompetent, and that he did not, in fact, remember pleading guilty. Additionally, Appellant claimed that his attorney had not acted in his best interest when she advised him to plead guilty, and that her lack of competence rendered his plea involuntary. The sentencing hearing was deferred pending an evaluation of Appellant's mental health.

A competency hearing was held on August 29, 2007. Appellant was found competent. Another hearing was held on Appellant's motion to withdraw his guilty plea, after which the trial court concluded that Appellant was not mentally impaired on the day he entered his plea, and that his plea was voluntarily entered. The trial court denied his motion, and on September 21, 2007, formally sentenced Appellant, fixing his sentence at life imprisonment.

Appellant argues on appeal that the trial court's findings regarding his competence to enter a guilty plea and its conclusion that his attorney did not render ineffective service were clearly erroneous. He also argues that the trial court erred at the sentencing hearing when, after declining to impose the agreed upon twenty-year sentence, it failed to afford him an opportunity to withdraw his guilty plea, as required by RCr 8.10.

We find no fault in the trial court's findings that Appellant was competent, that his guilty plea was made voluntarily, and that he was not rendered ineffective assistance of counsel at the time of the plea. The trial court's findings are supported by substantial evidence. However, we conclude that when the trial court declined to impose the twenty-year sentence offered as the part of the plea agreement, RCr 8.10 required that he be given an opportunity to withdraw the plea. Accordingly we reverse and remand the mat-

ter to the trial court for further proceedings.

RCr 8.10 provides, in pertinent part:

If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact ... afford the defendant the opportunity to then withdraw the plea, and advise the defendant that if the defendant persists in that guilty plea the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

RCr 8.10 requires that "upon the determination of a trial court that it will not follow the plea agreement made between the prosecutor and the defendant, the defendant has a right to withdraw the guilty plea without prejudice to the right of either party to go forward from that point." *Haight v. Commonwealth*, 938 S.W.2d 243, 251 (Ky.1996) (*citing Commonwealth v. Corey*, 826 S.W.2d 319 (Ky.1992)).

We have not established by rule or decision any formal requirements for determining when a "plea agreement" is formed. Instead, principles of basic contract law apply. In *Commonwealth v. Reyes*, 764 S.W.2d 62, 65 (Ky.1989), we held:

If the offer is made by the prosecution and accepted by the accused, either by entering a plea or by taking action to his detriment in reliance on the offer, then the agreement becomes binding and enforceable. Constitutional as well as contractual rights become involved. This is the thrust of *Cope v. Commonwealth*, Ky., 645 S.W.2d 703 (1983) and similar cases in other jurisdictions. In commercial contract law this is offer and acceptance, making a contract, or an offer and detrimental reliance which creates an estoppel preventing withdrawal of the offer.

*See also O'Neil v. Commonwealth*, 114 S.W.3d 860 (Ky.App.2003) (holding that plea agreements are contracts, and are interpreted according to ordinary contract principles.)

The facts regarding the existence of an agreement between Appellant and the Commonwealth are not in dispute. During the plea colloquy that followed, this exchange occurred between Appellant's counsel and the trial court:

THE COURT: Okay; and what's your understanding of how he intends upon pleading today in reliance upon the Commonwealth's offer?

APPELLANT'S COUNSEL: Judge, he intends to plead guilty today to all counts as charged. He understands that this is a blind plea, or an open plea to the Court, and that the Commonwealth has a recommendation in the case, but that will occur at sentencing.

The trial court's use of the word *"offer"* and its reference to Appellant's *"reliance upon the Commonwealth's offer"* indicate that under *Reyes* and under contract law, a plea agreement had been formed. Throughout the brief filed with this Court, the Commonwealth refers to the proceeding conducted by the trial court on April 18 as a "plea agreement." Thus, we conclude that Appellant's arrangement with the Commonwealth was a plea agreement.

The Commonwealth responds to Appellant's argument by asserting that he had no right to withdraw his plea because he entered it voluntarily and that he was twice informed that his plea was a "blind plea." However, the voluntariness of the plea does not negate Appellant's right under RCr 8.10 to withdraw his plea when the judge rejected the agreement. Voluntary pleas are subject to RCr 8.10. RCr 8.08 directs that the trial court "shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge."

Thus, the only pleas which should ever get to the sentencing stage where RCr 8.10 is implicated are those which the trial court has determined were made voluntarily. RCr 8.10, as it relates to rejected plea agreements would have no meaning if it applied only to involuntary pleas of guilty, because regardless of whether the trial court accepts or rejects a plea agreement, an involuntary guilty plea is always subject to be withdrawn. *See Rodriguez v. Commonwealth*, 87 S.W.3d 8, 10 (Ky.2002) ("Our case law is clear that the discretion to deny a motion to withdraw a guilty plea exists only after a determination has been made that the plea was *voluntary*. If the plea was *involuntary*, the motion to withdraw it must be granted.")

The designation of Appellant's plea as a "blind plea" makes no difference. While the term itself has no standard, precise definition, and may have different meanings in different jurisdictions, we know exactly what it meant in the context of this case because the trial judge carefully explained the term to Appellant. Appellant was informed at the plea colloquy that the local rules of the court required that any plea agreement made less than a week before the trial date would be deemed a "blind plea," which the judge then explained by stating, "Again ... what you're entering here today is called a blind plea, which basically again means that the court will accept a recommendation from the Commonwealth, but it does not mean the court will follow that recommendation."

By that definition, all plea agreements are "blind pleas" because the decision to accept or reject a plea agreement is always within the province of the trial court. *See Kennedy v. Commonwealth*, 962 S.W.2d 880, 882 (Ky.App.1997) (holding that the trial court has ultimate sentencing authority and that it is not bound by the plea negotiations of the Commonwealth or the plea bargain itself).

Appellant's decision to plead guilty was made in reliance upon the Commonwealth's offer to recommend a twenty year sentence, and therefore constitutes a "plea agreement" subject to RCr 8.10.[1] That agreement did not entitle him to a twenty-year sentence, but it did entitle him to the provisions of RCr 8.10 under which the trial court must afford him the opportunity to withdraw the plea before imposing a sentence that deviated from the punishment he had bargained for when he waived his rights and pled guilty.[2]

The failure to grant that opportunity to Appellant is error. Accordingly, we must reverse the final judgment entered herein and remand this matter to the trial court for a new sentencing hearing at which, if the plea agreement is rejected, Appellant shall be afforded the opportunity to withdraw his plea, and for such other proceedings as necessarily follow thereafter.

All sitting. MINTON, C.J., and NOBLE, J., concur. ABRAMSON, J., concurs with the majority's opinion but joins Justice Cunningham's observation

---

1. The Motion to Enter Guilty Plea (AOC–491) which Appellant tendered to the trial court when his plea was entered states: "I understand that if the Court rejects the plea agreement, it must so inform me. If this occurs ... I may withdraw my guilty plea and proceed to trial."

2. This opinion does not foreclose the ability of the trial court to set, as a docket management tool, a reasonable date in advance of trial

after which it will accept a plea agreement only if the defendant waives his rights under RCr 8.10. As with other important rights, that waiver would have to be made knowingly, intelligently, and voluntarily. Here, Appellant knew that the trial court could reject the plea agreement but he was never told that in a "blind plea" he was expected to waive his rights under RCr 8.10.

that this Court should require all felony plea agreements to be in writing and signed by the prosecutor, defendant, and defense attorney. CUNNINGHAM, J., dissents by separate opinion in which SCHRODER and SCOTT, JJ., join.

CUNNINGHAM, J., Dissenting:

I respectfully dissent from the opinion of the esteemed and highly respected majority as voiced through the excellent writing of Justice Venters.

There may have been an agreement in this case between the Commonwealth and Appellant's counsel. But there was not a *plea* agreement as anticipated by RCr 8.10. I am afraid that our Court, in deeming it so, will bring confusion and disorientation into a practice which occurs frequently in our courts.

The following exchange occurred between Appellant's counsel and the trial court during the plea colloquy:

> THE COURT: Okay; and what's your understanding of how he intends upon pleading today in reliance upon the Commonwealth's offer?
>
> MS. BELLEW: Judge, he intends to plead guilty today to all counts as charged. He understands that this is a blind plea, or an open plea to the Court, and that the Commonwealth has a recommendation in the case, but that will occur at sentencing.

During the plea colloquy, the trial judge made it clear to Appellant that, under the local rules, any plea entered on the day of trial would be a blind plea.[3] Moreover, the trial judge further declared that "the Commonwealth is only making a recommendation at this point," which the court later decided not to follow. The Common-

wealth's supposed recommendation of 20 years is never specified at the time of the plea. The trial court gave extensive reasons for not following the Commonwealth's recommendation and sentencing Appellant to life in prison. One reason given was that the offenses for which Appellant was being sentenced had been committed only six days after his release from prison on one of three prior felonies.

Courts must have wide discretionary berth in controlling their dockets. It is not unusual for judges to refuse to accept plea agreements on the day of trial with juries waiting in the wings. This practice, however, does not preclude guilty pleas from being entered on the day of trial. Many defendants, if not most, will reconsider their options when a panel of fellow citizens is present and willing to pronounce judgment upon them.

It is the deficient defense lawyer indeed who will not ascertain—most likely in a casual manner—what the prosecutor will recommend if the Commonwealth is saved the trouble of a trial by the defendant pleading guilty. It is the rare prosecutor, and the rarer yet situation, where a plea will not still be welcomed. Thus, the recommendation is conveyed to the defense lawyer. That is, in a sense, an agreement. But it is not a *plea* agreement. To hold otherwise—as the majority does in this case—will place a chilling, if not freezing effect on this practice. From henceforth, and with this case a precedent, prosecutors may well be reluctant to make any recommendation in that situation. For if the court decides to sentence the defendant to more than recommended, then the whole day's work—jury expenses and all—will go down the drain at sentencing when the defendant is allowed to withdraw the plea.

---

**3.** *See* KY BCWC XXIII (Pretrial Conferences in Criminal Cases) and KY BCWC XXIV (Tri-    als in Criminal Cases).

The local rules of the Bourbon Circuit Court also required that all plea agreements be in writing.[4] This is a good rule, as this case graphically illustrates. But, here, it was not done. We do violence to the integrity and validity of local rule making, approved by our Chief Justice, by not upholding this requirement. I would go so far as to mandate such by judicial decree—a requirement no doubt already carried out in most all plea agreements across the state.

The trial judge in this case went to great pains to explain to Appellant that there was no plea agreement and he was not so bound. The fact that the Commonwealth's Attorney changed his mind as to his recommendation, after Appellant sought to withdraw his plea, has no bearing upon the judge since RCR 8.10 was inapplicable. Therefore, the trial court did not abuse its discretion in denying Appellant's motion to withdraw his guilty plea.

I would affirm. SCOTT and SCHRODER, JJ., join.

4. *See* KY BCWC Rule XXV (Plea Agreements).