RENDERED:  AUGUST 6, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1052-MR

JAMES RIDENOUR                                                                 APPELLANT

v.
APPEAL FROM MCCREARY CIRCUIT COURT
HONORABLE DAN BALLOU, JUDGE
ACTION NO. 17-CR-00088

COMMONWEALTH OF KENTUCKY                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND LAMBERT, JUDGES.

ACREE, JUDGE:  James Ridenour appeals his final judgment and sentence on plea of guilty, claiming he detrimentally relied on an ambiguous plea agreement that resulted in the unjust imposition of a restitution obligation greater than $10,000.  He asks this Court to order the trial court to modify the restitution awarded to no more than that amount.  Finding no error, we affirm.

## BACKGROUND

In 2017, Earl Brooks died and soon after car parts began to go missing from the salvage yard he owned. Investigation of the crime led prosecutors to Ridenour. The grand jury indicted him on the charge of theft by unlawful taking over $10,000, a Class C felony. KRS[1] 514.030(2)(e).[2] The charge was based on evidence that the value of the stolen goods was $20,129.45 – evidence in the discovery file the Commonwealth gave Ridenour before the plea agreement.

In 2019, while this charge remained pending, Ridenour engaged in unrelated conduct leading to charges of burglary, first degree, theft by unlawful taking under $500, and being a convicted felon in possession of a firearm.[3] These charges were referenced as part of the plea agreement Ridenour accepted in the instant case on February 18, 2020.[4] Ridenour agreed to plead guilty in the instant

---

[1] Kentucky Revised Statutes.

[2] The Legislature amended the statute in 2021; this crime is now defined by KRS 514.030(g). *See* 2021 Ky. Laws ch. 66, § 8 (eff. Jun. 29, 2021).

[3] As discussed *infra*, this related case, *Commonwealth v. Ridenour*, No. 19-CR-00062 (McCreary County), is referenced in Ridenour's plea agreement in the instant case. We take judicial notice of these charges pursuant to Kentucky Rules of Evidence (KRE) 201(b)(2). The charge of burglary, first degree, was amended before Ridenour's plea in that case to burglary, second degree.

[4] Ridenour accepted and signed the plea agreement on February 18, 2020. The order on a plea of guilty was entered on February 24, 2020.

case to the lesser offense of theft by unlawful taking less than $10,000, a Class D felony, KRS 514.030(2)(d),[5] according to these specific terms:

> Five (5) years to serve. Restitution to be set at final sentencing. No contact w/ complaining witness. Concurrent to 19-CR-62.

(Record (R.) at 77). The Commonwealth recommended not only five years to serve on the lesser charge, but also that the term run concurrently with the term of imprisonment imposed in *Commonwealth v. Ridenour*, No. 19-CR-00062.[6] The Commonwealth wanted to include Ridenour's agreement to pay the restitution amount it determined of $20,129.45, but Ridenour said, "I do not believe there is a factual basis to support this." He agreed that restitution was to be determined at a subsequent hearing at which he could present his own proof of the value of the stolen goods.

The restitution hearing was conducted over two days. During the first day, the Commonwealth presented testimony from James Lyons. Lyons helped Brooks run the salvage yard for thirty years. He created an inventory of all missing parts and calculated the replacement cost. Based on a 175-page exhibit containing this information, Lyons testified that the fair market value of the stolen

---

[5] The statute's 2021 amendment resulted in converting this crime into two separate crimes – one a felony and one a misdemeanor. *See current statute* KRS 514.030(2)(d) and (2)(e).

[6] The plea agreement in *Commonwealth v. Ridenour*, No. 19-CR-00062, like the agreement in the instant case, was signed on February 18, 2020. It includes a reciprocal condition that "Sentence shall run concurrent to Indictment # 17-CR-00088, for a total effective sentence of Five (5) years to serve."

auto parts was $20,129.45. On the second day, defense counsel called Miranda Perry, an alternative sentencing worker, who testified the replacement parts' value was $6,059.10. The court found the Commonwealth's evidence more persuasive and ordered restitution in the amount of $20,129.45.[7]

This appeal followed.

## STANDARD OF REVIEW

Ridenour's demand is that this Court "vacate the order setting restitution and remand this case with instructions to order an amount of restitution consistent with the plea agreement." (Appellant's Brief, p. 8). We review a trial court's ruling concerning restitution for an abuse of its discretion, which occurs when a court's judgment is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). A court abuses the discretion afforded it when "(1) its decision rests on an error of law . . . *or a clearly erroneous factual finding*, or (2) its decision . . . cannot be located within the range of permissible decisions." *Miller v. Eldridge*, 146 S.W.3d 909, 915 n.11 (Ky. 2004) (citations omitted). We also keep in mind that the trial court is always in the best position to judge the evidence of record and the credibility of the witnesses before it.

---

[7] The court set a payment schedule to begin 90 days after Ridenour's release when he was to pay $100 a month for three months, $150 a month for the next three months, $200 a month for the next three months, and $250 a month until the amount was paid in full.

-4-

However, Ridenour asserts the proper standard of review is *de novo* because it requires contract interpretation and a determination whether there is an ambiguous term requiring the contract to be set aside. (Appellant's Brief, p. 3). We address this conflict in the analysis.

## ANALYSIS

Ridenour says, "[I]t was implicit in the [plea] agreement that [his] restitution would be more than $500, but less than $10,000 since his charge was amended as part of his agreement." (Appellant's Brief, p. 7). He argues, therefore, that the trial court's order requiring him to pay $20,129.45 in restitution for the crime of theft by unlawful taking under $10,000 violated due process.

Consequently, the review necessary to fully analyze Ridenour's appeal is to determine: (1) whether the plea agreement is enforceable as written; and (2) whether the restitution hearing satisfied due process. Our analysis borrows liberally from the case upon which Ridenour relies heavily, *Commonwealth v. Morseman*, 379 S.W.3d 144 (Ky. 2012), and the authorities that case cites. *The plea agreement is enforceable*.

Plea agreements are bargained-for exchanges and are governed by basic contract law. *Covington v. Commonwealth*, 295 S.W.3d 814, 816 (Ky. 2009). The requirements associated with contracts are "offer and acceptance, full and complete terms, and consideration." *Cantrell Supply, Inc. v. Liberty Mut. Ins.*

*Co.*, 94 S.W.3d 381, 384 (Ky. App. 2002) (citations omitted). Here, the plea

agreement contains all the requirements of a valid and enforceable contract:

> (1) the Commonwealth's offer to amend the charge against Ridenour under KRS 514.030(1)(a) from a Class C felony under subsection (2)(e) with potential imprisonment up to ten (10) years, to a Class D felony under subsection (2)(d) and to recommend a five-year sentence to run concurrently with his sentence in No. 19-CR-00062, with "[r]estitution to be set at final sentencing" to allow Ridenour to present evidence contradicting the Commonwealth's evidence of the value of the stolen goods;
>
> (2) Ridenour's acceptance of the offer indicated by his signatures on the Commonwealth's offer on a plea of guilty and the accompanying court order, as well as an oral guilty plea;
>
> (3) full and complete terms incorporated into the Commonwealth's offer on a plea of guilty and the accompanying court order; and
>
> (4) consideration in the form of mutual promises–the Commonwealth's agreement to decline pursuing the Class C felony, and to run the recommended five-year sentence concurrently with the sentence to be agreed upon in No. 19-CR-00062.

*See RAM Eng'g & Constr., Inc. v. Univ. of Louisville*, 127 S.W.3d 579, 586 (Ky.

2003) ("'[T]he courts in general require that before mutual promises will be

enforced, each as the consideration of the other, each party must promise to do

something which will yield a benefit or advantage to the other, or which will result

in a detriment or disadvantage to himself in exchange for the other promise.'")
(quoting 7 WILLISTON ON CONTRACTS § 7:6, at 77-79 (4th ed. 1992)).

Accordingly, "[e]ach party should receive the benefit of his bargain[,]" *United States v. Wesley*, 13 Fed. Appx. 257, 259 (6th Cir. 2001), and "[the contract's] terms must necessarily be interpreted in light of the parties' reasonable expectations and understanding of what the agreement means[.]" 22 C.J.S. *Criminal Procedure and Rights of Accused* § 203 (2021) (citations omitted). Thus, the question becomes what the parties' reasonable expectations were, and what they understood the agreement to mean.

Ridenour believes his expectation was reasonable that restitution was capped at $10,000. We disagree.

Complete, not partial, restitution to the victim of Ridenour's crime is required by statute because Ridenour pleaded guilty to a Class D felony offense. KRS 532.356(1)(b); *see also* KRS 533.030(3) ("Restitution shall be ordered in the full amount of the damages . . . ."); KRS 439.563(6) (requiring "[p]ayment of restitution in full . . . ."); and KRS 532.032(1) ("The provisions of this section [requiring restitution] shall not be subject to suspension or nonimposition."). It is not reasonable to expect the Commonwealth to make an offer contrary to law that requires full restitution.

Furthermore, "the Commonwealth will generally consult with and secure the approval of the victim for any plea bargain it may desire to offer." *Morseman*, 379 S.W.3d at 150. Ridenour points to nothing in the record suggesting the victim was willing to accept less. Absent evidence of such willingness, it is not reasonable to expect it.

Did Ridenour receive the benefit of this bargain? We conclude the answer is, without question, yes. The net effect of his plea agreement is that he will serve no additional time in prison for violating KRS 514.030(1)(a) when he stole auto parts from Earl Brooks' salvage yard. It will be the same five years he agreed to serve for his crimes addressed in *Commonwealth v. Ridenour*, No. 19-CR-00062. By refusing to agree to the restitution the Commonwealth was prepared to prove, he effectively afforded himself the opportunity to present his own evidence of the stolen property values – and he did.

That leads the Court to the next question: was the restitution hearing conducted in accordance with due process? We conclude it was.

*Restitution was determined in accordance with due process*.

Ridenour makes no claim of due process violations like those in *Jones v. Commonwealth* where the defendant "was given no prior notice of the restitution claim or the list of items, and was allowed no opportunity during the sentencing hearing to contest the claimed losses or to otherwise ascertain or challenge the

validity of the amount claimed." 382 S.W.3d 22, 29 (Ky. 2011). Ridenour knew he was indicted originally for theft of property exceeding a value of $10,000 and that the Commonwealth's evidence placed that value at more than $20,000.

In determining restitution, "a lower standard of due process applies . . . [and] to satisfy this standard, the defendant must have some meaningful opportunity to be heard and the record must establish a factual predicate for the restitution order." *Wiley v. Commonwealth*, 348 S.W.3d 570, 575 (Ky. 2010). In this case, the trial court satisfied this standard of due process.

*The restitution ordered does not conflict with Commonwealth v. Morseman*.

Ridenour interprets *Commonwealth v. Morseman*, *supra*, as holding that "a trial court may not order a criminal defendant to pay restitution to a victim of a crime for which he was not convicted." (Appellant's Brief, p. 5 (citing *Morseman*, 379 S.W.3d at 152)). But Ridenour interprets *Morseman* too narrowly.

The crime to which Ridenour pleaded guilty is defined at KRS 514.030(1)(a): "theft by unlawful taking or disposition when he unlawfully . . . [took] or exercise[d] control over movable property of another with intent to deprive him thereof[.]" His prison term for that crime was determined incidentally by the Commonwealth's agreement to amend the charges to a Class D, rather than Class C, felony. Nothing in this record limited the extent of restitution for the crime defined by KRS 514.030(1)(a) to any specific amount or any general amount

less than $10,000. Nothing in *Morseman* prohibits the trial court from ordering restitution in an amount equal to what was taken. Otherwise, not only would the victim not be made whole, Ridenour would be unjustly enriched.

When the Supreme Court of the United States addressed a similar question,[8] the focus was on "losses *caused by the conduct* underlying the offense of conviction." *Hughey v. United States*, 495 U.S. 411, 416, 110 S. Ct. 1979, 1982, 109 L. Ed. 2d 408 (1990) (emphasis added). Ridenour wants this Court to focus on the particular "offense of conviction" and not his underlying conduct of stealing the victim's property. We agree with the Supreme Court of the United States that "the loss *caused by the conduct underlying the offense* of conviction establishes the outer limits of a restitution order." *Id.* at 420, 110 S. Ct. at 1984 (emphasis added).

To be clear, Ridenour's proposed evidentiary fact that the value of goods was $10,000 or less was not established at trial by a judicial admission or even by the Commonwealth's failure to convince a jury it was more. The plea agreement makes all the difference.

---

[8] *Hughey* addresses the restitution provisions of the federal Victim and Witness Protection Act of 1982, 18 United States Code (U.S.C.) §§ 3579, *et seq.* in the context of due process. The conviction there, as here, resulted from a guilty plea, followed by a restitution hearing. However, the defendant in *Hughey* did not plead to a lesser charge under the applicable statute; he pleaded guilty to one count of a six-count indictment for theft and credit card fraud. *Hughey*, 495 U.S. at 413, 110 S. Ct. at 1981. The applicable principle, as we read *Hughey*, is the Court's repeated focus on the criminal *conduct underlying* the conviction.

Both parties agreed to have the trial court determine restitution. That agreement reflected both Ridenour's disagreement with the Commonwealth's value, as well as the Commonwealth's disagreement with Ridenour's value. Ridenour never negotiated a cap of $10,000. The Commonwealth's agreement to reduce the charge from a Class C to a Class D felony is not a judicial admission that the Commonwealth could not prove the victim's damages exceeded $10,000, and Ridenour does not directly argue as much.[9]

Ridenour has given this Court no basis upon which to set aside the plea agreement and none upon which to set aside the trial court's order determining restitution.

## **CONCLUSION**

For the foregoing reasons, we affirm.


ALL CONCUR.

---

[9] This Court said in *Reece v. Dixie Warehouse and Cartage Company*: the argument that some statement or act is a judicial admission is a question of law reviewed *de novo*; judicial admissions are not to be taken lightly and should be narrowly construed; to rise to the level of a judicial admission the statement or act must be deliberate, unequivocal, and unexplained or uncontradicted; and whether a statement or act is a judicial admission must be assessed in the light of all the conditions and circumstances of the case. 188 S.W.3d 440, 448 (Ky. App. 2006) (citations omitted).

BRIEFS FOR APPELLANT:

Kayla D. Deatherage
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Jenny L. Sanders
Assistant Attorney General
Frankfort, Kentucky