RENDERED: MAY 22, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0311-MR

FRANKIE COVINGTON                                             APPELLANT

APPEAL FROM BOURBON CIRCUIT COURT
v.       HONORABLE MICHAEL DEAN, SPECIAL JUDGE
ACTION NO. 06-CR-00062

COMMONWEALTH OF KENTUCKY                                      APPELLEE

AND

NO. 2023-CA-0339-MR

FRANKIE COVINGTON                                             APPELLANT

APPEAL FROM BOURBON CIRCUIT COURT
v.       HONORABLE MICHAEL DEAN, SPECIAL JUDGE
ACTION NO. 06-CR-00062

COMMONWEALTH OF KENTUCKY                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, EASTON, AND McNEILL, JUDGES.

CALDWELL, JUDGE: Frankie Covington ("Covington") appeals from the denial, without an evidentiary hearing, of his CR[1] 60.02 motion to vacate his conviction and sentence. For the reasons stated herein, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

On April 7, 2006, attorney Sharon Muse ("Muse")[2] encountered Covington, a former client, as she left her office in Georgetown for the day. Covington got in Muse's car. According to Muse, Covington had a knife and forced her to drive to a remote area in Bourbon County as he made threats, touched her in a sexual manner, and tried to hurt her.

In September 2006, Covington was indicted for allegedly kidnapping Muse. He was also indicted on charges of sexual abuse, resisting arrest, and being a Persistent Felony Offender ("PFO") in the first degree.

In 2007, Covington pleaded guilty but then filed a motion to withdraw this plea. The Bourbon Circuit Court denied his motion to withdraw his guilty plea and sentenced Covington to life in prison. Covington appealed.

---

[1] Kentucky Rules of Civil Procedure.

[2] Muse has since married and apparently goes by the name of Sharon Muse Johnson based on court documents filed by her counsel. For the sake of simplicity, we refer to her as "Muse" throughout this Opinion. However, some quotations and citations to court opinions refer to Muse as "Muse Johnson" or "Muse-Johnson."

Our Supreme Court reversed Covington's conviction and sentence. *Covington v. Commonwealth*, 295 S.W.3d 814 (Ky. 2009). It held the circuit court erred in not allowing Covington to withdraw his guilty plea since the circuit court elected not to apply the negotiated sentence of twenty years. *Id.* at 816-17.

Upon remand to the circuit court, this case proceeded to a jury trial in early 2011. The jury heard testimony from Muse, including cross-examination about inconsistencies in her pretrial statements and trial testimony. The jury also heard testimony from three witnesses who encountered Muse and Covington after Muse got out of her car. Two witnesses recounted seeing Muse exit the car while Covington grabbed onto her shirt. All three witnesses said Muse told them Covington had a knife and was threatening her and trying to hurt her. The bystander witnesses also testified to Covington's having a knife despite Covington's initially denying having one.

The jury found Covington not guilty of sexual abuse and of resisting arrest. However, the jury found Covington guilty of kidnapping and of being a first-degree PFO. After the jury found Covington to be a first-degree PFO, the court instructed the jury it could sentence Covington to twenty to fifty years to life imprisonment. The jury recommended a sentence of life imprisonment, and the circuit court followed this recommendation upon final sentencing.

Covington appealed. Our Supreme Court affirmed his convictions

and sentence in 2012. *Covington v. Commonwealth*, No. 2011-SC-000172-MR,

2012 WL 1899782 (Ky. May 24, 2012) (unpublished).

In 2013, Covington filed a *pro se* RCr[3] 11.42 motion, claiming

ineffective assistance of counsel.[4] Covington claimed trial counsel failed to

address how Muse's trial testimony was contradicted by photographs in the record.

He also claimed counsel failed to effectively address substantial differences in

Muse's pretrial statements versus her trial testimony. He acknowledged counsel

cross-examined Muse about some inconsistencies between her trial testimony and

pretrial statements. However, Covington also asserted counsel failed to have

Muse's pretrial statements admitted into evidence so that the jury was not allowed

to examine these written statements despite its request to do so. Covington

requested an evidentiary hearing.

The circuit court denied Covington's RCr 11.42 motion, apparently

without an evidentiary hearing. Covington filed an appeal from the denial of his

RCr 11.42 motion with this Court. However, this appeal was dismissed in late

2015 due to Covington's failure to timely file an appellant brief.

---

[3] Kentucky Rules of Criminal Procedure.

[4] The Department of Public Advocacy ("DPA") filed a motion to withdraw, stating that a reasonable person would not spend his/her own money to file such a motion. The circuit court granted this motion to withdraw.

In the spring of 2022, Covington filed a motion, by counsel, to obtain copies of Muse's sealed victim impact statements to determine if post-conviction litigation should be pursued. The motion asserted that information had recently come to light from an independent source related to the case which suggested a need for investigation of potential new evidence.

In November 2022, Covington filed a CR 60.02 motion, by counsel, to vacate his conviction and sentence. He alleged that he was wrongfully convicted, and that Muse testified untruthfully at trial. Covington noted the recent (2020) publication of Muse's book about being kidnapped by a former client. Covington alleged Muse made statements in her book which were inconsistent with her pretrial statements, trial testimony, and victim impact statements and caused prosecutors from both the 2007 guilty plea proceedings and the 2011 jury trial to have concerns about Muse's truthfulness. He also asserted she made further inconsistent statements while promoting her book.

Covington attached some excerpts from Muse's book to his CR 60.02 motion. The portions of the book included in the record describe a kidnapping incident but do not explicitly refer to Covington; instead, Muse described being kidnapped by someone named Larry Morrison.

Covington also attached to his CR 60.02 motion other items, including written pretrial statements by Muse, a recording of Muse talking with a 911 dispatcher, and a transcript of her interview at the hospital on April 7, 2006.

Additionally, Covington attached affidavits from former prosecutors who handled the 2007 guilty plea proceedings and the 2011 jury trial, respectively. One prosecutor who participated in the jury trial ("the jury trial prosecutor") averred that Muse wrote a book in 2019 or 2020 and that he read this book upon its release. The jury trial prosecutor indicated he perceived that Muse's book was marketed as a true crime story about the Covington case despite its references to a kidnapper named Morrison.

The jury trial prosecutor averred that he perceived statements in this book as substantially differing from trial evidence, Muse's pretrial statements, and his own recollection of portions of her victim impact statement—especially regarding threats made and injuries received. He believed the description of Muse's injuries in her book was inconsistent with her trial testimony. He also believed Muse's statements in the book about attending a concert the day after the crime conflicted with his recollection of her victim impact statement indicating she was unable to use one arm or to walk unassisted for several days after the kidnapping. He averred to contacting the former prosecutor who handled the 2007

-6-

proceedings ("the guilty plea prosecutor") to discuss their ethical obligations and to their agreeing they were ethically obligated to inform defense counsel.

The guilty plea prosecutor admitted to not having read the full book in his affidavit. However, he averred that he discussed the matter with the jury trial prosecutor, and they together determined that Covington's former counsel should be notified. Both former prosecutors' affidavits were executed in July of 2022.

The Commonwealth filed a response to Covington's CR 60.02 motion, arguing the motion was untimely and did not merit relief or even an evidentiary hearing. Muse also filed, by counsel, a response to the CR 60.02 motion purportedly pursuant to KY. CONST. § 26A ("Section 26A"), also known as "Marsy's Law." Covington filed a reply to the Commonwealth's response, in which he requested an evidentiary hearing. Covington also filed a motion to strike Muse's response, arguing Section 26A did not make Muse a party to the case. (He also noted Muse failed to file a motion to intervene under CR 24.03.)

The circuit court denied Covington's motion to strike Muse's response. While acknowledging that Muse was not a party to this case, the court determined that Muse had a right to be heard on the CR 60.02 motion to vacate pursuant to Section 26A, which included a right to file a response.

The circuit court also denied Covington's CR 60.02 motion and his request for an evidentiary hearing. The circuit court determined the CR 60.02

motion was untimely. The court also concluded Covington had failed to allege facts which, if true, justified vacating the conviction.

Covington filed a timely appeal from the denial of his CR 60.02 motion.[5] Muse filed a motion to intervene in the appeal and a motion for leave to file an appellee brief. This Court denied both of Muse's motions, concluding she had no right to intervene and declining her request for permissive intervention. *See generally Covington v. Commonwealth*, 678 S.W.3d 918 (Ky. App. 2023).

Muse filed an appeal with our Supreme Court, challenging our denial of her requests to intervene and to file an appellee brief. Meanwhile, the present appeal from the denial of Covington's CR 60.02 motion was placed in abeyance while Muse's appeal was pending before our Supreme Court. In January 2026, our Supreme Court dismissed Muse's appeal as being from an interlocutory order which was not final and appealable. The Supreme Court further remanded the case back to this Court to rule on the merits of Covington's appeal from the CR 60.02 denial, including his challenge to the circuit court's denial of his motion to strike Muse's response. *Muse-Johnson v. Covington*, No. 2023-SC-0538-MR, 2026 WL 491200 (Ky. Jan. 16, 2026) (unpublished).

---

[5] Covington also initially filed a separate appeal from the denial of his motion to strike Muse's response, which was later consolidated with his appeal from the CR 60.02 denial.

Upon finality of our Supreme Court's opinion and order dismissing Muse's appeal and remanding to this Court to rule on the merits of Covington's appeal, we entered an order placing this case back on our active docket in February 2026. Further facts will be provided as necessary in our analysis.

## ANALYSIS

### Appellate Standard of Review

We review the circuit court's ruling on the CR 60.02 motion for abuse of discretion. *Priddy v. Commonwealth*, 629 S.W.3d 14, 17 (Ky. App. 2021).

### Relevant Provisions of CR 60.02

CR 60.02 states a court "may, upon such terms as are just" provide relief to a party from its final judgment on grounds including: "(b) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59.02; (c) perjury or falsified evidence"; or "(f) any other reason of an extraordinary nature justifying relief." CR 60.02 further provides: "The motion shall be made within a reasonable time, and on grounds (a), (b), and (c) not more than one year after the judgment, order, or proceeding was entered or taken."

Covington's CR 60.02 motion requested relief based on Muse's book and other post-trial statements being inconsistent with her pretrial statements, trial

testimony, and victim impact statements and causing prosecutors to have doubts about Muse's truthfulness.

The circuit court construed the motion as asserting either CR 60.02 (b), (c), or (f) grounds—newly discovered evidence, perjury, or other reasons of an extraordinary nature. The court noted CR 60.02(b) and (c) grounds must be raised within one year of the final judgment and the CR 60.02 motion was filed many years after the 2011 judgment of conviction and sentence (which was affirmed on direct appeal in 2012). Thus, assuming CR 60.02 (b) and (c) were the relevant grounds, the court found the motion was untimely.

Moreover, even if the motion stated other reasons of an extraordinary nature, *see* CR 60.02(f),[6] the court determined it had not been filed within a reasonable time—because Covington's CR 60.02 motion was filed more than ten years after the 2011 judgment of conviction and sentence.

Covington asserts that the circuit court erred in determining his CR 60.02 motion was untimely. He claims his motion stated CR 60.02(f) grounds and was filed within a reasonable time—since the motion was filed in 2022 after the book's 2020 release and the former prosecutors' subsequently advising defense

---

[6] As the Commonwealth points out, relief for any reason of an extraordinary nature under CR 60.02(f) is not available unless no other CR 60.02 provision applies. *Snodgrass v. Snodgrass*, 297 S.W.3d 878, 884 (Ky. App. 2009).

counsel of their concerns. Covington's brief argues: "Under Kentucky law, a 'reasonable time' is determined by the amount of time that has elapsed between when the litigant could have reasonably uncovered the basis for the claim and when the claim was filed." (Appellant red brief, p. 17) (citing *e.g.*, *Cain v. Cain*, 777 S.W.2d 238 (Ky. App. 1989)).

However, we need not scrutinize whether Covington filed his motion within a reasonable time. Even assuming *arguendo* the CR 60.02 motion was timely filed, we discern no reversible error in the circuit court's denying the motion without an evidentiary hearing.

**No Error in Circuit Court's Denying CR 60.02 Relief Without an Evidentiary Hearing Because Covington Did Not Allege Facts, Which if True, Would Have Been Reasonably Certain to Affect the Outcome of the Trial or Indicate the Trial Was Akin to No Trial At All**

Kentucky precedent has long held:

> [CR 60.02] is for relief that is not available by direct appeal and not available under RCr 11.42. The movant must demonstrate why he is entitled to this special, extraordinary relief. Before the movant is entitled to an evidentiary hearing, he must affirmatively allege facts which, if true, justify vacating the judgment and further allege special circumstances that justify CR 60.02 relief.

*Gross v. Commonwealth*, 648 S.W.2d 853, 856 (Ky. 1983).

Where CR 60.02 relief is sought based on newly discovered evidence, the movant must show he/she acted with reasonable diligence to discover the new evidence and the evidence would have, with reasonable certainty, changed the

-11-

verdict or would lead to a different result if a new trial is granted. *Commonwealth v. Graham*, 586 S.W.3d 754, 765 (Ky. App. 2019).

Similarly, where CR 60.02 relief is sought based on allegations that prosecutors unknowingly offered perjured testimony at trial, "the burden remains on the defendant to show both that a reasonable certainty exists as to the falsity of the testimony and that the conviction probably would not have resulted had the truth been known before he can be entitled to such relief." *Commonwealth v. Spaulding*, 991 S.W.2d 651, 657 (Ky. 1999).

Likewise, if any other extraordinary reason for seeking relief is stated, *see* CR 60.02(f), the movant has the burden to affirmatively allege facts which, if true, justify vacating the judgment of conviction. The movant must also allege special circumstances justifying CR 60.02 relief. Moreover, the CR 60.02(f) movant must "present facts which render the 'original trial tantamount to none at all'" to obtain relief. *Foley v. Commonwealth*, 425 S.W.3d 880, 885 (Ky. 2014) (quoting *Brown v. Commonwealth*, 932 S.W.2d 359, 361 (Ky. 1996)).

Even assuming the CR 60.02 motion was timely, the circuit court concluded Covington was not entitled to CR 60.02 relief and an evidentiary hearing was not necessary, explaining:

> Even if timely, the Defendant [Covington] failed to meet his burden of establishing with a reasonable certainty that Muse-Johnson testified falsely at this trial, and that he probably would not have been convicted had the truth

been presented. Other than proclaiming his innocence, he has not alleged facts which if true, justify vacating the conviction. At best he has established that the victim told versions of the crime which were inconsistent with her trial testimony. These unsworn statements, even if inconsistent with the victim's trial testimony, do not constitute newly discovered evidence that would with reasonable certainty have probably changed the verdict. The victim may have embellished the facts after the trial, perhaps to sell more books, but the inconsistent statements are not exculpatory, and even if true, do not exonerate the Defendant.

(Pages 3-4 of Order Denying Motion to Vacate Conviction at Vol. 2, pp. 225-26 of Record of Fourth Appeal).

Despite the circuit court's extraneous statements about Muse's post-trial statements not being exculpatory and not exonerating Covington, we recognize that a post-conviction CR 60.02 movant is not required to prove his/her innocence to possibly be entitled to a new trial. *See Graham*, 586 S.W.3d at 764. Nonetheless, the circuit court did not err in concluding that, even accepting as true the alleged inconsistencies between Muse's recent unsworn statements in books and promotions versus her trial testimony and other previous statements, her recent inconsistent statements would not have, with reasonable certainty, changed the verdict. *See id*. at 764-65; *Spaulding*, 991 S.W.2d at 657. Nor do such alleged inconsistencies in Muse's recent unsworn statements indicate that the trial was so unfair as to essentially amount to no trial at all. *See Foley*, 425 S.W.3d at 885.

-13-

In concluding that these allegations of recent inconsistent statements are insufficient to merit CR 60.02 relief or even an evidentiary hearing, we do not discount Covington's assertion that Muse's recent unsworn statements caused the guilty plea and jury trial prosecutors to have concerns about whether Muse's trial testimony was entirely truthful or trustworthy. However, "newly discovered evidence that merely impeaches the credibility of a witness or is cumulative is generally disfavored as grounds for granting a new trial." *Foley v. Commonwealth*, 55 S.W.3d 809, 814 (Ky. 2000).

Neither prosecutor's affidavit expressly stated that Muse had testified falsely. Nor did Muse expressly state that she was recanting or repudiating her trial testimony in any of the post-trial statements to which Covington has pointed.

Nonetheless, Covington emphasizes that Muse's testimony was the only testimony about what happened between him and her during the April 7, 2006, ride in her car. He highlights an excerpt from Muse's book in which she said she had purposefully written pretrial statements in a vague manner and referred to them as general statements. He suggests her stating she was intentionally vague in making pretrial statements meant she purposefully withheld facts prior to the trial. But Muse did not state she intentionally withheld facts until trial. She also did not clearly identify her motivation for purposefully writing general pretrial statements in a vague manner in the excerpts of her book contained

-14-

in the record. Perhaps she simply meant she elected not to go into undue detail in pretrial statements. Even if Muse truly had been intentionally vague in making pretrial statements, that does not necessarily mean she was untruthful in making either her pretrial statements or her trial testimony.

Covington places great emphasis on a statement in the book suggesting Muse could have taken a knife to lacerate her dashboard and cut a gouge from the necklace she was wearing and handed such items to police without anyone ever knowing what she had done. Yet stating she **could** have done this is not an admission that she took such action.

Covington also contends that Muse's accounts of what happened during their shared car ride significantly changed from her pretrial statements to her trial testimony and then again with her book and related appearances. Again, Covington emphasizes that she was the only witness who testified to what happened during their shared car ride. He suggests Muse's changing accounts cast doubt on whether she ever told the full truth to anyone and indicate he was convicted on unreliable evidence.

Covington asserts her statements about the crime vary significantly about such questions as: 1) whether Covington touched her and in what manner, 2) whether Covington hit Muse or banged her head into the console, 3) what happened when Muse parked the car by a barn, 4) whether Covington held a knife

to Muse's neck, 5) whether Muse was wearing a shirt when the other trial witnesses encountered her, and 6) what injuries (if any) she sustained.

In response, the Commonwealth contends that Muse's post-trial statements did not contradict her pretrial statements or trial testimony but were simply more descriptive. The Commonwealth also aptly points out that Muse was cross-examined about inconsistencies in her pretrial statements versus her direct testimony at trial, and that Covington previously made arguments about such inconsistencies in his RCr 11.42 motion.[7]

The Commonwealth also suggests the inconsistencies between her sworn trial testimony and later unsworn statements do not indicate Muse perjured herself at trial. It argues that the allegedly inconsistent post-trial statements at issue are simply cumulative evidence which perhaps impeaches her credibility but does not merit a new trial. *See generally Foley*, 55 S.W.3d at 814.

The Commonwealth also emphasizes the bystander witnesses' testimony about seeing Muse appear frightened and hearing her tell them that Covington had kidnapped her at knifepoint and threatened to hurt or kill her. Thus, given other strong evidence of guilt, the Commonwealth argues that

---

[7] As the Commonwealth and circuit court both noted, successive post-conviction motions about previously litigated issues are not permitted. *See, e.g.*, *Berry v. Commonwealth*, 624 S.W.3d 119, 121 (Ky. App. 2021). Of course, any issues pertaining to Muse's book (published in 2020) and its promotion could not have been raised in the 2011-2012 direct appeal or the 2013-2015 RCr 11.42 proceedings.

inconsistencies between Muse's trial testimony and her later, unsworn statements would not be reasonably certain to have affected the verdict and/or to result in a different outcome if a new trial were granted.

In response, Covington asserts in his reply brief that inconsistencies in Muse's statements amount to more than just perjured testimony. In fact, he argues that Muse's "inconsistent statements and interferences with investigation pre-trial, *which were discovered when* [*Muse*] *admitted to it in her book*, deprived Mr. Covington of due process and a fair trial." (Reply brief, p. 4) (emphasis in original).

Covington does not provide a citation to the record where he specifically asserted to the circuit court that Muse admitted to interfering with the investigation, however. Certainly, he pointed to inconsistencies in her statements and emphasized her statement about trying to keep her written pretrial statements vague throughout the CR 60.02 proceedings. But we have not been directed to any portion of the record in which Muse expressly admitted to interfering with the investigation. And we find no error in the circuit court's not interpreting Muse's post-trial statements quoted in Covington's CR 60.02 motion as any admission to interfering with the investigation.

Despite Covington's arguments for relief, we discern no abuse of discretion in the circuit court's determination that he was not entitled to CR 60.02

-17-

relief or even to an evidentiary hearing.  Perhaps other courts faced with a CR 60.02 motion might reasonably wish to conduct an evidentiary hearing when presented with the unusual situation of sworn statements by prosecutors that they felt an ethical obligation to inform defense counsel of a victim's post-trial unsworn statements which contradict his/her trial testimony on key details.  Nonetheless, considering the specific convictions obtained here, we cannot say the circuit court abused its discretion in determining that the inconsistencies in Muse's post-trial unsworn statements would not be reasonably certain to change the verdict or result in a different outcome if a new trial were granted.  *See Spaulding*, 991 S.W.2d at 657 (even if there is a reasonable certainty that testimony was false, "the materiality of the testimony is not so certain").

As suggested by the circuit court's statement that perhaps Muse embellished her story to sell more books, some of Muse's recent unsworn statements generally appear to convey a more dramatic, harrowing account of the kidnapping incident than the account in Muse's trial testimony or pretrial statements—sometimes even recounting more severe threats or injuries.[8]

---

[8] Although generally the statements in Muse's book or promotions often provide more harrowing details than her pretrial statements or trial testimony, a portion of the jury trial prosecutor's affidavit suggests that the book indicates Muse suffered lesser injuries than those described in a victim impact statement she provided.  The jury trial prosecutor averred that the book said that Muse attended a concert where she ran to the bathroom the day after the kidnapping incident.  However, we have been unable to easily locate any such statement about Muse's attending a concert that day in the portions of the book contained in the record.

However, even assuming that Muse's book was presented as an entirely non-fictional account despite the book's referring to a kidnapper by a different name,[9] the fact that Muse told a story with heightened drama and more heinous details in her unsworn post-trial statements does not show with reasonable certainty that the outcome of the trial would have been different if such statements were presented. Nor does it indicate that Covington did not receive a fair trial or due process.

---

This prosecutor further averred that the alleged description of Muse attending a concert and running to the bathroom the next day was inconsistent with his recollection of her claiming to have been unable to walk without assistance (and unable to use one arm) for several days after the kidnapping incident.

We located in the record a victim impact statement prepared by Muse in 2007, which did state that she was unable to use one arm or to walk without assistance for several days due to injuries suffered in the kidnapping. However, this victim impact statement would not have been presented to the jury. *See* Kentucky Revised Statutes ("KRS") 421.520. So, the inconsistency between the book and the victim impact statement would not affect the jury's verdict or recommended sentence. Moreover, the inconsistency between the alleged unsworn statement in the book about Muse attending a concert the next day and the victim impact statement indicating Muse could not walk unassisted or use one arm for several days after the kidnapping would not be reasonably certain to affect the final sentence imposed by the trial court—especially since the court followed the jury's recommendation. Nor does this inconsistency between the book and the victim impact statement indicate that Covington's trial was fundamentally unfair and akin to no trial at all.

[9] Since we do not have the complete text of the book in the record, we do not know whether the book contained any disclaimers about statements being to the best of Muse's knowledge or recollection, or about any names or details being changed, or even whether the book purported to be a work of fiction or non-fiction.

**To the Extent that Muse's Unsworn Post-Trial Statements Contradicted Her Pretrial Statements and/or Trial Testimony, the Circuit Court Did Not Abuse its Discretion in Determining that Such Contradictions Would Not Have Been Reasonably Certain to Change the Verdict or to Result in a Different Outcome if a New Trial Were Granted**

Since Covington was acquitted of first-degree sexual abuse, *see* KRS 510.110, inconsistencies in Muse's accounts regarding such matters as whether Covington touched Muse's breasts or between her legs or tore off her shirt to expose her breasts are immaterial. Moreover, although Covington was convicted by the jury of being a first-degree PFO, the inconsistencies in Muse's accounts highlighted in Covington's briefs are not about his record of prior convictions. *See generally* KRS 532.080(3) (defining a first-degree persistent felony offender as one who was previously convicted of two felonies in addition to presently being convicted of a felony).

As for Covington's conviction of kidnapping Muse, the jury was instructed that to find Covington guilty of this offense, it must find that he restrained Muse by deception and intimidation, without her consent, and with the intent to inflict bodily injury or to terrorize the victim. *See* KRS 509.040(1)(c). ("A person is guilty of kidnapping when he unlawfully restrains another person and when his intent is: . . . (c) To inflict bodily injury or to terrorize the victim").

Also immaterial are inconsistencies in Muse's statements about exactly what injuries she suffered. The jury was not required to find that Muse

suffered any substantial bodily injury to convict Covington of kidnapping her. *See*

KRS 509.040(1).[10] Instead, it must simply find that Covington unlawfully

restrained her with the intent to inflict bodily injury or terrorize her to convict him

of kidnapping her. KRS 509.040(1)(c). The jury made the required finding, and

there was ample evidence to support this finding—regardless of Muse's later

inconsistent statements about specific threats made or injuries suffered. This is

especially true considering testimony from bystander witnesses about seeing

Covington grab Muse's shirt as she exited the car, and their recounting her

frightened demeanor and her descriptions of being kidnapped by Covington at

knifepoint with threats that he would hurt or kill her.

---

[10] Kidnapping is a Class B felony if the victim is returned alive to a safe place, but kidnapping is a Class A felony if the victim is seriously physically injured due to the kidnapping. KRS 509.040(2). Being convicted of a Class B felony subjects one to an authorized prison term of ten to twenty years. KRS 532.060(2)(b). After the jury found Covington guilty of kidnapping, it was instructed to sentence him to a term of ten to twenty years (the range for a Class B felony) and it recommended the maximum sentence of twenty years for the kidnapping conviction. (Later, the jury also found Covington guilty of being a first-degree PFO and recommended enhancing his sentence to the maximum sentence of life imprisonment and the trial court sentenced him in accordance with the jury's recommendations.)

Non-binding but persuasive unpublished precedent from our Supreme Court indicates the jury does not have to determine whether a victim suffered a serious physical injury when initially determining if the defendant is guilty of kidnapping under KRS 509.040(1), although a finding of serious physical injury must be made and supported by evidence to support a Class A felony conviction for kidnapping under KRS 509.040(2). *See generally McFarland v. Commonwealth*, No. 2002-SC-0790-MR, 2005 WL 387277, at *7 (Ky. Feb. 17, 2005) (unpublished). *See also generally* Rules of Appellate Procedure ("RAP") 40(D)(1); RAP 41(A). The jury did not convict Covington of a Class A kidnapping felony requiring a finding of serious physical injury; instead, it simply convicted him of a Class B felony kidnapping based on the record before us.

-21-

Moreover, while Muse may have given an inconsistent account of the crime in her book versus her trial testimony and/or pretrial statements, we disagree with Covington's assertion that this indicates he did not receive due process or a fair trial. His trial counsel cross-examined Muse about inconsistencies between her pretrial statements and her trial testimony and Muse had the opportunity to raise such inconsistencies between pretrial statements and trial testimony on direct appeal and in his RCr 11.42 motion.

Of course, Covington could not have pointed to the statements in Muse's book on direct appeal or in his RCr 11.42 motion because the book was not in existence during these earlier proceedings. But despite his now pointing to more recent, inconsistent statements in his CR 60.02 motion, we conclude the circuit court did not err in concluding such unsworn statements in Muse's book or promotions would not be reasonably certain to change the verdict or to affect the outcome if a new trial were conducted.[11] This is especially true in light of the bystander witnesses' testimony and of the elements of the specific offenses of which Covington was convicted (and those of which he was acquitted).

_____

[11] Covington was not required to prove his actual innocence to obtain a new trial pursuant to CR 60.02. *See generally Graham*, 586 S.W.3d at 764. However, any error in the circuit court's stating he was not entitled to relief because Muse's post-trial unsworn statements did not exonerate him or were not exculpatory amounted to, at most, harmless error. *See* CR 61.01. This is especially true since the circuit court did not abuse its discretion in determining that Covington failed to allege facts which, if true, would be reasonably certain to have changed the verdict or would be reasonably certain to change the result if a new trial were held.

To the extent that our reasoning differs from that expressed by the circuit court, we have the authority to affirm for any reason supported by the record. *See, e.g.*, *Commonwealth v. Mitchell*, 610 S.W.3d 263, 271 (Ky. 2020) ("While reversal of a lower court is restricted, an appeals court may affirm for any reason supported by the record[.]"). Next, we address the parties' arguments about the circuit court's allowing Muse to file a response to the CR 60.02 motion pursuant to Section 26A, also known as Marsy's Law.

### Circuit Court Erred In Not Striking Muse's Response to Covington's CR 60.02 Motion, But the Error was Harmless

Section 26A of the Kentucky Constitution provides that crime victims have certain rights including the right "to be heard in any proceeding involving a release, plea, sentencing, or in the consideration of any pardon, commutation of sentence, granting of a reprieve, or other matter involving the right of a victim other than grand jury proceedings[.]" It also recognizes that victims have "the right to consult with the attorney for the Commonwealth or the attorney's designee[.]"

Section 26A further states crime victims have "the right to fairness and due consideration of the crime victim's safety, dignity, and privacy; and the right to be informed of these enumerated rights, and shall have standing to assert these rights." It also recognizes that victims and/or their attorneys may seek enforcement of their Section 26A rights in any trial court with jurisdiction.

-23-

However, Section 26A also states: "Nothing in this section shall afford the victim party status" and: "Nothing in this section shall be construed to alter the powers, duties, and responsibilities of the prosecuting attorney."

In its order denying the motion to strike, the circuit court construed Section 26A as affording to Muse a right to file a response to Covington's CR 60.02 motion:

> While this provision expressly states that it does not give victims the status as parties, it just as clearly gives crime victims broad rights, including the right to be heard on all matters relating to the defendant's release, plea, sentencing, pardon, commutation of sentence, trial "*or other matter involving the right of a victim. . . .*" Moreover, these rights may be asserted by the victim and the victim's attorney. The Court finds Section 26A expressly gives the victim personally, and through her attorney, the right to be heard on the Motion to Vacate and including the right to file a Response to his Motion.

(Page 1 of Order Denying Motion to Strike Sharon Muse-Johnson Response, located at Vol. 2, p. 221 of Fourth Appeal) (emphasis in original).

In contrast to the circuit court's concluding Muse had a right to file a response to Covington's CR 60.02 motion, this Court determined that Muse had no right to file an appellee brief in Covington's appeal from the CR 60.02 denial. We essentially held Muse had no right to be heard in the CR 60.02 proceeding.

In denying her motion to intervene in the appeal, we stated:

> Here, Muse-Johnson's intervention would make her a party to the appeal. However, Marsy's Law does not

-24-

> give her the right to become a party. Criminal proceedings and appeals are between the State and the accused—not the crime victim. As the Kentucky Supreme Court emphasized, Marsy's Law entitles Muse-Johnson to ample notice on remand of any proceeding about Covington's release and a right to be heard, *if applicable.* These rights, coupled with the right to consult the Commonwealth and receive mandatory notice, satisfy the Marsy's Law requirements. Thus, Muse-Johnson does not have standing to join this appeal under Marsy's Law.

*Covington*, 678 S.W.3d at 921 (emphasis in original) (footnote omitted). We also stated: "This appeal involves Covington's conviction, but it is not a 'release, plea or sentencing' because a successful appeal of the order denying the CR 60.02 motion does not guarantee Covington's immediate release." *Id.* at 921 n.8.

And we rejected Muse's assertions that she was entitled to intervene as a matter of right or that permissive intervention should be granted, twice stating that no statute gave Muse a right to intervene. *Id.* at 921-22. We acknowledged that Muse had an interest in the CR 60.02 proceeding, which included protecting her safety and reputation. However, we also stated that her interest in having Covington's conviction upheld was shared by the Commonwealth. We held the Commonwealth had the responsibility to adequately represent Muse on appeal and to advance her interests through arguments and briefing. *Id.* at 922.

And in rejecting Muse's request for permissive intervention due to the allegations she committed perjury, we stated:

-25-

> It is true that Muse-Johnson's statements at trial and in her book create the factual scenario underlying this appeal. But the legal questions in this case concern the trial court's order based on the trial court record. Review on appeal must be based on the record as it was presented to the trial court.

*Id.* at 922. We accepted Covington's argument that no additional filings by Muse were necessary to determine the legal questions presented since such questions must be resolved based on the trial court record. *See id.*

Though we clearly held Muse was not entitled to file a brief in Covington's appeal, we recognize that the circuit court was not faced with precisely the same question since intervention in an appeal is always discretionary under RAP 9(A). We also appreciate that the circuit court was faced with construing Section 26A/Marsy's Law with no controlling Kentucky precedent about whether a victim has a right to file a response to a post-conviction CR 60.02 motion. In fact, the circuit court's ruling on the motion to strike Muse's response preceded our opinion and order denying Muse's motion to intervene in the appeal by several months. Nonetheless, we stand by the reasoning expressed in our prior opinion and order denying appellate intervention. We conclude that the circuit court erred in construing Section 26A to permit Muse's filing a response to Covington's CR 60.02 motion and in denying Covington's motion to strike.

As we expressed in our opinion and order denying appellate intervention, Section 26A clearly states that victims are not parties. *See Covington*,

678 S.W.3d at 920. And we essentially held that Muse had no right to be heard in the CR 60.02 proceeding. *See id*. at 921 n.8 (although victims have a right to be heard in proceedings involving criminal defendants' release, even the granting of CR 60.02 relief would not result in Covington's immediate release). Although victims have certain enumerated rights such as to notice and to consult prosecutors, Section 26A does not call for victims to file their own pleadings, motions, or responses in criminal actions filed by the Commonwealth against defendants.[12] Instead, attorneys for the Commonwealth (including the Attorney General for appeals and the local Commonwealth's attorney for circuit court proceedings) are charged with representing the victim's interest when the defendant files a post-conviction motion to vacate his/her conviction and/or sentence. *See Covington*, 678 S.W.3d at 922 ("Because the Attorney General's arguments and briefing will satisfy her interests, Muse-Johnson does not have the right to intervene as a party.").

In sum, though Section 26A sets forth that victims have certain rights such as to notice of certain proceedings and to consult with prosecutors, its clear

---

[12] *See generally Ohio v. Miller*, 265 N.E.3d 809 (Ohio App. 2025) (holding victim did not have a right under Ohio Marsy's Law constitutional provision or Ohio statutes to file a stand-alone, pretrial motion to modify conditions of defendant's bond despite victim having a right to notice and a right to be heard during public proceedings to set bond). This out-of-state precedent is not binding on us, and the Ohio Marsy's Law provision quoted therein does not appear identical to the text of Section 26A of our Kentucky Constitution. Nonetheless, we consider this out-of-state precedent to be somewhat persuasive.

statements that victims are not afforded party status means that victims cannot intervene to become parties in criminal cases and therefore cannot file pleadings, motions, or responses in post-conviction CR 60.02 proceedings. Thus, the circuit court erred in denying Covington's motion to strike Muse's response.

While the circuit court erred in permitting Muse to file a response to Covington's CR 60.02 motion, the error was harmless, however. *See* RCr 9.24.

Having reviewed both the CR 60.02 responses filed by the Commonwealth and by Muse along with the order denying the CR 60.02 motion, there is no indication that the circuit court relied on anything argued solely by Muse in ruling on the CR 60.02 motion. The circuit court briefly noted in a footnote that Muse claimed that her defeating one of the former prosecutors in a 2018 Commonwealth's attorney election motivated the former prosecutors to notify defense counsel and file affidavits about concerns related to her book. However, the court did not state whether it believed Muse's assertion about political motivations inspiring the former prosecutors' actions and it did not indicate this matter played any substantive role in making its decision.

Instead, the circuit court denied the CR 60.02 motion for essentially the same reasons argued by the Commonwealth in its response—namely, untimeliness and Muse's later unsworn statements not being something which would, with reasonable certainty, have changed the trial's outcome. In sum,

though we reject the circuit court's construction of Section 26A as establishing a victim's right to file a response to a post-conviction CR 60.02 motion, its error in denying Covington's motion to strike Muse's response was harmless.

Further arguments raised in the parties' briefs which we have not discussed herein have been determined to lack merit or relevancy to our resolution of this appeal.

## CONCLUSION

For the foregoing reasons, we **AFFIRM**.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Whitney B. Saffari[13]
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron[14]
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky

---

[13] Covington's appellate briefs were filed by his then-counsel, Whitney B. Saffari. While this appeal was pending, Chelsea M. Clem filed a notice that she has been substituted as counsel of record for Covington.

[14] When this appeal was filed, Daniel Cameron was the Attorney General of Kentucky and the Commonwealth's brief was filed under his name. Russell Coleman is the current Attorney General of Kentucky.